MINNA JORGENSON, APPELLANT, v. FRANK M. STEPHENS, APPELLEE.

10 N. W. (2d) 337

FILED JULY 2, 1943.   No. 31525.

*McKillip, Barth & Blevens,* for appellant.

*Herbert W. Baird, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

YEAGER, J.

This is an action by Minna Jorgenson, plaintiff and appellant, against Frank M. Stephens, defendant and appellee. The action is by plaintiff for injunction against defendant to prevent the discharge of surface water and water from eaves of buildings from premises of the defendant upon residence property of plaintiff, and for damages.

The action was tried in the district court for Lancaster county, Nebraska. The findings and decree were for the defendant. The plaintiff has appealed.

The real estate involved in this controversy is block 8, Sheridan Place, an addition to Lincoln, Lancaster county, Nebraska. The block is bounded by Lake street on the south, Twenty-seventh street on the east, Park street on the north and Sheridan boulevard on the west. Plaintiff's property is lot 2 which is a 50-foot lot facing Park street and extending southward to approximately the east and west center line of the block. It is one lot or 50 feet west from the east line of the block. The real estate of the defendant

is lots 12, 13 and the east 20 feet of lot 11. This real estate faces Lake street. Lot 13 adjoins and parallels Twenty-seventh street and extends northward to the approximate east and west center line of the block. This lot is 50 feet in width. Lot 12, which is another 50-foot lot, lies immediately to the west of lot 13. The east 20 feet of lot 11 lies immediately to the west of lot 12. Thus it will be seen that defendant has a frontage of 120 feet on Lake street with the depth of a half block on Twenty-seventh street. It will be observed further that lot 12 and plaintiff's lot are abutting properties. On plaintiff's lot is a one and one-half story residence and a garage. The garage is to the rear of the lot. On defendant's grounds are four structures or buildings. The first is an apartment building facing east and entirely on lot 13. Its depth is about 31 feet. The north end is about four feet south of the north line of the lot. The building extends southward about 66 feet. The roof slopes one-half to the east and one-half to the west. The second is another apartment house facing south or toward Lake street. The ground dimensions are the same as the first. The east end is on the west side of lot 13. From that point the building extends westward across lot 12 and onto the east 20 feet of lot 11. One-half of the roof slopes to the north and one-half to the south. On the north end of lot 12 is a garage about 41.5 feet in length and 20.8 feet in depth. The length is east and west. The north line of the garage is about four feet from the north end of the lot. The east end is eight or nine feet from the west or rear of the apartment building first described. The slant of the roof is very slight and to the north. The fourth structure is another garage of approximately the same dimensions as the first one described. Its length is north and south and its depth is east and west. Its east line is very slightly to the west of the west end of the other garage. Its north line is slightly to the south of the south line of the other garage. The slope of the garage is to the east. The west line of this garage is about 4.5 feet east of the west line of defendant's property. . These structures leave an unoccu-

pied corner at the northwest corner of defendant's property. This space is used for garbage receptacles, the disposal of rubbish and for clothes lines. Bounded in general by the four buildings is a court. Around part of the court is a concrete walk and within the concrete walk is an area covered with crushed rock. Along the north line of defendant's property, or at least a part of it, is a low retaining wall built of stones. The stones are not cemented or otherwise secured in position.

Sheridan boulevard extends from about Twenty-fifth and South streets in a southeasterly direction and intersects Lake street slightly more than 300 feet west of Twenty-seventh street and from there continues on southeasterly and intersects Twenty-seventh street, which street extends north and south. In the vicinity involved here the boulevard follows a ridge. The slope on one side descends to the southwest and on the other to the northeast. The properties here are on the northeastern slope with the property of the plaintiff directly below that of the defendant. It will be observed that in the natural state the dispersion or flow of surface water was from the land now owned by defendant onto that of plaintiff and other adjoining land.

Since Lake street was graded and paved it would appear that no surface water from the land south of Lake street comes onto any of these properties. It appears further that only water falling upon defendant's property may flow onto that of plaintiff.

From this physical description of the terrain and the structures we proceed to the ground or grounds upon which plaintiff bases her right to injunctive relief and to damages.

It is the claim of plaintiff that prior to the construction of the buildings on defendant's property the lands were leveled by removal of dirt from the south part and deposit thereof on the north part, which created a sharp drop at the north line; that the apartments were so constructed that the rain water from the west side of the east apartment building, the north side of the south apartment building and the south garage building were collected on defend-

ant's property and that in increased and concentrated quantities it was negligently caused to flow on plaintiff's property to her damage; also that the water from the north garage was negligently allowed to drip from the eaves onto her property, and further that the water collecting in the area west of the north garage and north of the south garage was negligently allowed to flow across the line causing damage. It is claimed that in addition to the water so flowing, dirt and débris were carried onto plaintiff's property.

The defendant generally denied the claims of plaintiff.

There are certain facts that are clearly established. One is that a lesser quantity of surface water is permitted to flow from defendant's property onto property adjoining on the north than would so flow if there had been no grading and no construction of buildings. No water dripped from the north garage onto plaintiff's property. All or most of the rain falling south of the center of the south apartment and east of the center of the east apartment building flows either into Lake or Twenty-seventh street and the property to the north is relieved from this burden. All of the remaining water, except that coming onto the northwest corner and that falling on the north garage which flows off, passes through a space between the east apartment building and the north garage of the width of 8.8 feet.

For the purposes of this case the width of flow is of no particular consequence. It is true that in the petition damage and injury is in part predicated upon collection and concentration of flow but careful examination discloses that from the standpoint of evidence reference is made only to volume and not to narrowed or concentrated flow.

It is further clear that plaintiff has and will continue to suffer inconvenience from the flow of water onto her property and that her property has been damaged. This, however, is not a matter for first consideration. The matter for first consideration is the right of the defendant with regard to the control, disposition and dispersion of his surface water.

It appears proper to interpolate here that the field for

discussion of physical steps open to plaintiff to protect against the flow of surface water onto her property has not been opened by this record.

With regard to surface water it has long been the rule that one may protect his land from surface water even to the damage of his neighbor and may only be held responsible in case of negligence. *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb. 406, 56 N. W. 946; *Anheuser-Busch Brewing Ass'n v. Peterson*, 41 Neb. 897, 60 N. W. 373; *Jacobson v. Van Boening*, 48 Neb. 80, 66 N. W. 993. Also it has long been the rule that the proprietor of lands may, by proper use and improvement thereon, deflect surface water; and will not be liable for consequent damage to his neighbor in the absence of negligence. *Morrissey v. Chicago, B. & Q. R. Co., supra; Churchill v. Beethe*, 48 Neb. 87, 66 N. W. 992. There has been no departure in the later cases. See *Todd v. York County*, 72 Neb. 207, 100 N. W. 299; *Aldritt v. Fleischauer*, 74 Neb. 66, 103 N. W. 1084; *Arthur v. Glover*, 82 Neb. 528, 118 N. W. 111.

It has also been held that a landowner, in the absence of negligence, may, in the interest of good husbandry, accelerate surface water in the natural course of drainage without liability to the lower proprietor. *Todd v. York County, supra; Perry v. Clark*, 89 Neb. 812, 132 N. W. 388; *Arthur v. Glover, supra; Aldritt v. Fleischauer, supra; Steiner v. Steiner*, 97 Neb. 449, 150 N. W. 205.

The latest expression of this court on the question of the servitude of a lower landowner to an upper owner with regard to surface waters is found in *Leaders v. Sarpy County*, 134 Neb. 817, 279 N. W. 809. In that case this court quoted with approval the following from *Heier v. Krull*, 160 Cal. 441, 117 Pac. 530: "Every landowner must bear the burden of receiving upon his land the surface water naturally falling upon land above it and naturally flowing to it therefrom, and he has the corresponding right to have the surface water naturally falling upon his land or naturally coming upon it, flow freely therefrom upon the lower land adjoining, as it would flow under natural conditions."

This rule as an abstract statement of law or viewed separate and apart from the matters under consideration in that case would appear to be a departure from the earlier pronouncements of this court wherein the common-law rule with exceptions and modifications was adopted and adhered to. The rule as announced is the following: "The doctrine of the common law in regard to surface waters is as a general rule in force and controls in this state. Surface waters may be controlled by the owner of the land on which they fall or originate or over which they flow. He may appropriate to his own use all that falls or comes on his land and refuse to receive any that falls or originates or flows on or over adjoining property." *Town v. Missouri P. R. Co.*, 50 Neb. 768, 70 N. W. 402. See, also, *Chicago, R. I. & P. R. Co. v. Shaw*, 63 Neb. 380, 88 N. W. 508; *Muhleisen v. Krueger*, 120 Neb. 380, 232 N. W. 735.

One important exception to the rule is: "The right under the general rule to control surface waters must be so exercised by any person as not to unnecessarily or negligently cause injury to the rights and property of others." *Town v. Missouri P. R. Co., supra.*

We think from an examination of the entire opinion in *Leaders v. Sarpy County, supra*, the court intended only to say that the upper owner of land has the right, without interference, to have the flow of surface water follow along a well-defined watercourse from his land. We do not think there was an intention to take away the right of a lower owner to, reasonably and without negligence, protect his land from surface water not flowing in a well-defined channel or watercourse but which by natural forces simply followed the general decline of the land.

Within the meaning of the decisions of this court the evidence fails to disclose that the defendant has been negligent in the dispersion of his surface waters upon the land of the plaintiff or that he has acted unreasonably. In the absence of such a showing no finding of liability may be made.

To require defendant, as plaintiff prays, to provide an unnatural and artificial outlet for his surface waters which

would carry it away before reaching the land of plaintiff would be both an innovation in our law and a stumbling block in the path of progress and the development of urban real estate. If such a rule were adopted development of rolling or hilly urban real estate would entail the oppressive burden, for each upper parcel, of providing for dispersion and disposal of surface waters through outlets other than over lower parcels within and without the area of the development. In other words urban development, except on level areas, would be arrested by the burden of overcoming the operation of the law of gravity.

Under the record here the plaintiff must be left to her own resources to, reasonably and without negligence, protect her property from the surface water coming from the property of the defendant, if she would have protection therefrom.

The decree of the district court is affirmed.

AFFIRMED.