Arthur D. JACOBSEN and Lucille Jacobsen,
Plaintiffs and Respondents,

v.

Charles A. PEDERSEN et al., Defendants
and Appellants,

v.

Leo JACOBSEN et al., Third-Party
Defendants and Respondents.

Civ. No. 8713.

Supreme Court of North Dakota.

Aug. 31, 1971.

1

George Longmire, Grand Forks, for plaintiffs and respondents.

Lanier, Knox & Olson, Fargo, for defendants and appellants.

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for third-party respondents Fred B. Johnson and Warren Johnson, Guardian.

ADAM GEFREH, District Judge.

This is an appeal by the defendants in an action tried to the district court of Steele County in which the district court granted judgment to the plaintiffs for $1,000.00 damages and an injunction to restrain the defendants from maintaining certain drainage ditches in their present condition and a mandatory injunction requiring the defendants to fill in certain portions of the drainage ditches in question.

The findings of fact made by the trial court show that the plaintiffs are the owners of three quarter sections of land in Steele County. The defendants are landowners whose lands are located above or on higher elevations than the land of the plaintiffs and the natural drainage carries waters from the lands of the defendants onto and through the lands of the plaintiffs. Two drainage courses run across the lands of the plaintiffs, one originating in the area of a lake described as the "Lone Tree Lake" which drainway has been referred to in the record as the "west ditch," and the other drainway originates in the area of another lake described as the "17 Acre Lake" which drainway has been referred to in the record as the "east ditch." According to the record, the "Lone Tree Lake" covers about fifty to sixty acres and is from one to four feet in depth and is located on the lands of the defendants Charles A. Pedersen and Alma Pedersen. The "17 Acre Lake" is located on land owned by the defendants Ruth Henoen, Dorothy L. Kraabel and Mildred I. Hagen.

The findings further show that the plaintiffs during the year 1967 did some cleaning out and shaping or "streamlining" of the natural drainways that run across their land, and that the plaintiffs used some of the equipment belonging to one of the defendants for this purpose. The court also found that the plaintiffs had given consent to limited drainage by the upper landowners, but had not given any consent to draining of either "Lone Tree Lake" or the "17 Acre Lake." The findings further show that the appealing defendants during the year 1967 also did some digging and streamlining along these natural drainways which are being referred to as the "west ditch" and "east ditch" in this opinion. The west ditch was constructed to within about six feet of Lone Tree Lake, and the east ditch to within "a few feet" of the 17 Acre Lake.

The evidence also indicates that these ditches in some areas resulted in draining small potholes or low areas through which the drainway flowed, and the depth of the ditches varied from one to about five feet and the width from about four feet to twenty feet, depending upon the topography of the land. The drainway is a part of the natural drainage that eventually takes all the runoff water into the Maple River several miles beyond the land of the plaintiffs.

The appellants have raised three issues on this appeal.

– 1. Appellants contend that whether or not the flow of water in the natural drainway was increased by the ditching or streamlining is not an issue under the pleadings.

– 2. Under the doctrine of clean hands the plaintiffs should have been denied relief.

– 3. Appellants contends that under the evidence and applicable law they have in no way altered or changed the natural flow of the water in this natural drainway so as to incur liability for damages to the plaintiffs.

Plaintiffs' complaint in paragraph 12 alleged in part:

"* * * for diverting drainage and waste water in great quantities onto and across plaintiff's said real estate, flooding and eroding it, and depositing mud, silt and debris thereon; and further are diverting said drainage and waste water in a manner different from what said waters would flow in their natural course."

The defendants, in their answer to the complaint and in particular to paragraph 12, answered as follows:

"Specifically denies that any of these defendants have erected or constructed any drainage ditch or ditches that has diverted drainage and waste water onto and across plaintiffs real estate, nor have they caused any drainage and waste water to flow in any manner different from what said waters would flow in their natural course."

■ When the plaintiffs tried to introduce evidence to the effect that the streamlining and ditching had accelerated the flow and volume of water in the natural drainway, the defendants objected to the testimony on the ground that it is immaterial since the allegations in the complaint had only alleged that the defendants had *diverted* the water and not *accelerated* it or *increased its volume*. The court overruled the objection. We believe the court properly overruled the objection. The evidence tends to show that by ditching or streamlining the natural drainway the defendants were in effect diverting water that would perhaps have meandered over parts of the lowland of the defendants and perhaps would have never reached the land of the plaintiffs. Some water would also have stayed in some of the small potholes and sloughs that now were being more completely drained as a result of the streamlining, which all would have a tendency of diverting water that otherwise might not have reached the plaintiffs and have a tendency to accelerate the flow and volume of water in the natural drainway.

■ No court cases have been cited by either party either in support of or in opposition to the trial court's ruling. Rule 8(f) of the North Dakota Rules of Civil Procedure provides as follows: "All pleadings shall be so construed as to do substantial justice." We find the allegations in the complaint sufficiently broad to apprise the defendants of the nature of the plaintiffs' claim and that is all that is required under our rules of practice. We conclude that whatever the variance between the proof and the pleadings, it was not such a variance as to mislead or surprise the defendants. A variance in a civil action is not material unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. See Whittier v. Leifert, 72 N.D. 528, 9 N.W.2d 402 (1943), and Ferderer v. Northern Pac. Ry. Co., 77 N.D. 169, 42 N.W.2d 216 (1950).

■ ■ We also agree with the trial court that the doctrine of "clean hands" is not applicable in this case. As a general rule, the doctrine of unclean hands is applicable only where the party seeking to invoke it was injured by the alleged wrongful acts of the other party. See 27 Am. Jur.2d Equity § 145, p. 681. The acts of which the defendants are complaining about in no way affected' them. The fact that the plaintiffs were streamlining their portion of this natural drainway would in no way damage or affect the defendants, consequently the defendants are not in a position to invoke this doctrine.

The trial court granted an injunction against the defendants Charles A. Pedersen, Alma Pedersen, Bruce Pedersen, Har-

old Jensen, A. Stanley Johansen and Sonja E. Johansen, as follows:

" * * * from maintaining the drain (West ditch) in its present condition which represents a constant and continuing threat to seriously damage the Plaintiffs' premises by erosion and washout flooding from Lone Tree Lake and said Plaintiffs are entitled to a mandatory Injunction requiring said Defendants to fill drainage ditches which they have constructed across their property to the extent necessary to prevent any discharge of water out of said Lone Tree Lake in a manner other than it ordinarily would have been discharged in the natural course of drainage."

The injunction against the defendants Ruth Henoen, Dorothy L. Kraabel, Mildred I. Hagen, Wilbur Haugaard, Harold Jensen and Esther Jensen reads as follows:

" * * * from maintaining the drain (East ditch) in its present condition which represents a constant and continuing threat to more seriously damage the Plaintiffs' premises by erosion and spreading of silt, and the Plaintiffs are entitled to a mandatory Injunction requiring said Defendants to fill drainage ditches which they have constructed across their property to the extent necessary to prevent any discharge of water out of the '17 acre lake' and by said natural drain (East ditch) in a manner other than it ordinarily would have been discharged in the natural course of drainage."

We have two separate and distinct activities of the defendants being enjoined, the draining of the Lone Tree Lake and the 17 Acre Lake, and the construction or streamlining of the natural drainways leading from the immediate vicinity of each of these two lakes.

We conclude that Section 61–01–22 of the North Dakota Century Code is applicable in respect to the draining of the Lone Tree Lake and the 17 Acre Lake. Section 61–01–22 provides as follows:

"Any person, public or private corporation, proposing to drain waters from a pond, slough or lake, which impounds waters gathered therein and drained from an area comprising eighty acres or more into a natural watercourse, as defined by section 61–01–06, or into a draw or natural drainway, before constructing a ditch or facility for the purpose of such drainage shall submit to the state water conservation commission an application for a permit to do so. If sixty per cent or more of the watershed or drainage area of such watercourse, draw or natural drainway is embraced within the boundaries of a water conservation and flood control district, the state water conservation commission shall refer the application to the board of commissioners of such water conservation district for consideration and approval. Such permit shall not be granted until an investigation shall disclose that the quantity of water which will be drained from the pond, slough or lake, as the case may be, will not exceed the capacity of such watercourse, draw or drainway to carry, and will not flood lands of lower proprietors. If such investigation shall show that the proposed drainage will cause such watercourse or drainway to overflow and flood the lands of lower landowners, the board of commissioners of the water conservation and flood control district or the state water conservation commission, as the case may be, shall not issue a permit until flowage easements are obtained from owners of lands which might be burdened with the flood waters of such watercourse, draw or drainway * * *."

We conclude that each of these two bodies of water impound waters gathered therein and drained from an area comprising eighty acres or more, and it is conceded by the defendants that no flooding easements had been obtained or application filed as required by the Act. Accordingly,

the owners of the land upon which these lakes are located may properly be enjoined from draining these lakes until such time as they may have complied with the provisions of Section 61–01–22, North Dakota Century Code.

In respect to the so-called streamlining of the natural drainways a different principle of law applies. Both, appellants and respondents, have cited Rynestad v. Clemetson, 133 N.W.2d 559 (N.D.1965). In Jones v. Boeing Company, 153 N.W.2d 897, on pp. 903–904 (N.D.1967), this Court reviewed our holdings in Henderson v. Hines, 48 N.D. 152, 183 N.W. 531, Lemer v. Koble, 86 N.W.2d 44, and Rynestad v. Clemetson, *supra*, and stated:

"Various rules have been enunciated with reference to the discharge of surface waters. In a few jurisdictions the courts, in recognizing the rigidity of traditional rules, have evolved a rule of 'reasonable use' which does determine the rights of the parties with respect to the disposition of surface waters by an assessment of all of the relevant factors. One such jurisdiction is New Jersey, whose court in Armstrong v. Francis Corporation, 20 N.J. 320, 120 A.2d 4, 59 A.L.R.2d 413, adopted the reasonable use rule after a careful analysis of the various rules.

\*  \*  \*  \*  \*  \*

"We desire to apply a rule which will be fair and just. Having this objective in mind, we adopt the reasonable use rule as expressed in the New Jersey case of Armstrong v. Francis Corp., supra. We believe the rule in the New Jersey case has been well stated and that it represents not so much a change in policy by this court as a clarification of the rationale followed in prior decisions and that the result reached is a similar one."

The New Jersey case of Armstrong v. Francis Corp., *supra*, cites Enderson v. Kelehan, 226 Minn. 163, 32 N.W.2d 286 (1948), in which the "reasonable use" rule is more clearly defined. In Enderson v. Kelehan, *supra*, at 289, the rule is stated as follows:

"As promulgated in the leading case of Sheehan v. Flynn, 59 Minn. 436, 61 N.W. 462, 26 L.R.A. 632, and as amplified by subsequent decisions, the rule is that in effecting a reasonable use of his land for a legitimate purpose a landowner, acting in good faith, may drain his land of surface waters and cast them as a burden upon the land of another, although such drainage carries with it some waters which would otherwise have never gone that way but would have remained on the land until they were absorbed by the soil or evaporated in the air, if

(a) There is a reasonable necessity for such drainage;

(b) If reasonable care be taken to avoid unnecessary injury to the land receiving the burden;

(c) If the utility or benefit accruing to the land drained reasonably outweighs the gravity of the harm resulting to the land receiving the burden; and

(d) If, where practicable, it is accomplished by reasonably improving and aiding the normal and natural system of drainage according to its reasonable carrying capacity, or if, in the absence of a practicable natural drain, a reasonable and feasible artificial drainage system is adopted."

The reasonable use rule has also been adopted by the state of South Dakota in its recent decision of Mulder v. Tague, 186 N.W.2d 884, on page 889 (S.D.1971), stating:

"Following the modern trend of authorities we expressly adopt the 'reasonable use' rule relative to the drainage of surface waters in urban areas of this state. Under this rule each owner 'is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs

liability when his harmful interference with the flow of surface waters is unreasonable.' 1A Thompson on Real Property § 266, p. 384. See also 5 Powell on Real Property § 731, p. 438.5; Anno: Surface Waters-Drainage-Etc., 59 A.L.R.2d 421."

In a recent decision, Erickson v. Tyler, 186 Neb. 743, 186 N.W.2d 123 on page 126 (1971), the state of Nebraska, without specifically stating that it has adopted the reasonable use rule, stated:

"Surface water is a common enemy, and the owner of real estate in the interest of good husbandry and in the absence of negligence or evidence of diversion to the injury of the lower landowner, may accelerate its flow in the natural course of drainage without liability to the lower owner. Jorgenson v. Stephens, 143 Neb. 528, 10 N.W.2d 337."

We will reaffirm the reasonable use rule that we adopted in Jones v. Boeing Company, 153 N.W.2d 897 (N.D.1967), as this rule is stated and explained in Armstrong v. Francis Corp., 20 N.J. 320, 120 A.2d 4, and Enderson v. Kelehan, 226 Minn. 163, 32 N.W.2d 286 (1948), in all those factual situations where the provisions of Section 61–01–22, North Dakota Century Code, do not apply.

█ The facts in this case are undisputed that the ditching or streamlining of both the west and east ditches did not drain any large potholes or sloughs, but merely gathered the water that normally would have spread out over a larger area into a narrower channel along the natural drainway. Since the drainway has now been cleaned out and straightened out in some areas, and slightly deepened in some other areas, it no doubt will accelerate the flow of water thus draining all of the land more quickly and more completely than before the ditching was done. This we believe had the effect of improving and aiding the normal and natural drainage systems. Under the reasonable use doctrine, this practice is permissible providing it is not done negligently or unreasonably. The testimony by both experts, plaintiffs' and defendants', who testified in this action, is to the effect that the ditching or streamlining has been done rather expertly and could hardly have been designed any better. In respect to the west ditch, the trial court made the following finding:

"8. That the ditch construction by the Defendants in the natural drain (West ditch) constitutes material alteration of the natural drain which has added to the quantity of water and speed of flow onto the plaintiffs' premises; that the Court observed very little erosion or washing out in the areas shaped by the Plaintiff and few, if any, places which could not be crossed with farm machinery; and that ditching by Defendants had resulted only in nominal damages to the Plaintiffs; but that the present condition of said West ditch represents a constant and continuing threat to seriously damage the Plaintiffs' premises by erosion and washout flooding from Lone Tree Lake in the event of high water levels."

The trial court after hearing all the testimony and personally viewing the area found that very little erosion or washing out had taken place in the areas shaped by the plaintiffs and that the ditching by the defendants had resulted in only nominal damages to the plaintiffs. We are satisfied that the court's finding of a "material alteration of the drain" had reference primarily to the shaping and construction of the drainway rather than to any accelerated flow or volume of the water, because the only added quantity would be the water that heretofore would have meandered over a larger surface area and would have soaked into the ground or evaporated by the slower flow through the natural drainway. We believe the court was primarily concerned with the threat of flooding that might occur should Lone Tree Lake overflow and wash out the short plug that was left between the lake and the ditch.

In respect to the east ditch, the trial court made the following finding:

"14. That the Plaintiffs have not consented to the draining of the '17 acre lake'; and that the ditching by the Defendants from said '17 acre lake' to the Plaintiffs' premises is an alteration of the natural drain (East ditch) which has increased materially the volume and speed of water discharged on the lower lands owned by the Plaintiffs, resulting in damages to the Plaintiffs by causing erosion in said ditch and the depositing of silt over approximately ten acres of farm land, rendering the same untillable.

"15. That a natural spring exists on the Plaintiffs' premises in said natural drain across the NE 1/4 of the SE 1/4 of Section 23 which at the time of trial was open and flowing thereby adding to the erosion and depositing of silt on Plaintiffs' premises."

A review of the evidence indicates that all of the landowners who testified, including the plaintiffs, agreed that these two drainways are natural drainways; that water has flowed in both of these drainways almost every spring and at other times when there was a large amount of rainfall, and that the years 1966, 1968 and 1969 were very wet years with a lot of flooding in this particular area of the state. The year 1967 was relatively drier and permitted these landowners to do some streamlining of the natural drainway where erosion during prior years had caused cuts and ruts to form in several places and where silt had gathered in other areas. The plaintiffs in their testimony admitted that they streamlined their portion of these drainways because they had difficulty crossing the drainway in some areas due to water erosion and that other areas had started to gather considerable amounts of silt. We believe the trial court's concern in regard to the east ditch was the same as with the west ditch. The court was concerned about drainage from the 17 Acre Lake more than about the acceleration of flow caused by the streamlining.

The record discloses another significant factor concerning volume and speed of water flow. The west ditch water commencing near Lone Tree Lake has to run through several culverts where the drainway intersects township roads. The west ditch enters the land of the plaintiffs from the west in the SW 1/4 of Section 23, runs in a slightly easterly and then southerly direction, leaving the SW 1/4 of Section 23 through an 18" culvert onto the land owned by Peder Haugaard and then swings back north again onto the plaintiffs' land near the southwest corner of the SE 1/4 of Section 23 through a 24" culvert and then leaves the land of the plaintiff on the east side of the SE 1/4 through a 36" culvert. The east ditch water comes through a 16" culvert in the NW 1/4 of Section 23 and then continues southeasterly and enters the plaintiffs' SE 1/4 and leaves their land through a 30" culvert. According to the record, none of these culverts were changed or enlarged by any of the defendants, except the culvert in the SW 1/4 of Section 23 where the drainway leaves the land of the plaintiffs. This culvert was lowered in 1964 and then replaced in 1965 by the larger present 18" culvert by the plaintiffs. When Mr. Lanier was cross examining the plaintiff, Arthur D. Jacobsen, concerning this work he testified as follows:

"Q. And you had a man come out and dig it out and ditch and put in a culvert in 1964, did you not?

"A. I don't remember the year.

"Q. Would you deny it was '64?

"A. No, I won't.

"Q. All right. Then, in the spring runoff in '65 before any of this ditching had been done it was so heavy that the culvert wouldn't take it and you replaced it with a larger culvert in 1965, did you not?

"A. Well, all of the water above me came down onto my land so fast.

"Q. Exactly, in 1964, didn't it?

"A. It all drained above me so it had to come down.

"Q. Do you know whether or not it came down the natural waterway that ran onto your land?

"A. (No response)

"Q. Well, don't answer. So, in 1965 you placed a large culvert so it would take or carry that water quickly from your land to get it off, did you not?

"A. I did."

This indicates that the water capacity leaving the plaintiffs' land is much greater than the water capacity coming to the plaintiffs' land, and would further indicate that no significant change in the speed or volume of water was caused by the streamlining since, according to the plaintiffs' own admission, the water was flowing fast and a lot of it prior to 1967, and it still flows through the same capacity culverts after the streamlining.

After reviewing the entire record, the court's findings and conclusions of law, we conclude that the ditching or streamlining of the natural drainways by all of the defendants was reasonable under the reasonable use doctrine that this court has adopted. Accordingly, the defendants are not liable for any damages that the plaintiffs may have suffered as a result of the improvement made in the natural drainways by the defendants. The findings of the trial court specifically stated that the plaintiffs only suffered nominal damages as a result of any work on the west ditch. The judgment awarding damages against the owners of the west ditch was inconsistent with the court's own findings and therefore was erroneous. The trial court did find about ten acres of the plaintiffs' land untillable because of silt and erosion caused by the east ditch; however, there is ample evidence in the record to show that some of the erosion and gathering of silt had taken place prior to the year 1967, the plaintiffs having admitted that they streamlined their portion of the ditches in order to clear them of silt and reshape the cuts and ruts. The trial court found that the natural spring that exists on the plaintiffs' land in the east ditch also contributed to the erosion and silting.

We, therefore, conclude that the ditching and streamlining by the defendants over whose land the east ditch crosses was also reasonable under all the facts and circumstances in this case. It appears that most, if not all, of the damage that has been caused by silting would ordinarily have resulted even without the ditching and streamlining of the defendants, and that whatever damage might be attributed to the streamlining is a permissible result under the reasonable use doctrine when weighed against the benefit that has accrued to the upper landowners through the careful shaping and sloping of the natural drainway that crosses their land. Accordingly, the defendants over whose land the east ditch crosses also are not liable for any damages to the plaintiffs, and therefore that part of the judgment granting damages against all the defendants is being reversed.

We have already stated that the court correctly granted an injunction against the owners of the land upon which Lone Tree Lake and 17 Acre Lake are located enjoining them from draining these two lakes. We also conclude that the plaintiffs are entitled to a modified mandatory injunction against the defendants upon whose land the Lone Tree Lake and the 17 Acre Lake are located requiring these defendants to fill in so much of the respective drainage ditches immediately adjacent to these lakes to prevent any erosion that would drain these two bodies of water lower than normal in the event that high water will cause them to overflow. The injunction granted against the other defendants is without any legal basis, and accordingly is being reversed. In order not to leave any ambiguity in this regard, we order that the

injunction provisions of the judgment be modified as follows:

1. That the plaintiffs are entitled to an injunction, and that the same is hereby ordered against the defendants Charles A. Pedersen and Alma Pedersen, enjoining them from draining Lone Tree Lake located on their land; and that the plaintiffs are entitled to a mandatory injunction, and the same is hereby ordered, requiring said defendants to fill in and compact with soil similar to that originally removed so that the same is restored to its pre-existing natural level that portion of the drainage ditch for a distance of two hundred yards from the point where said Lone Tree Lake would normally overflow.

2. That the plaintiffs are entitled to an injunction, and that the same is hereby ordered, against the defendants Ruth Henoen, Dorothy L. Kraabel, and Mildred I. Hagen, enjoining the said defendants from draining the 17 Acre Lake; and that the plaintiffs are entitled to a mandatory injunction, and the same is hereby ordered, requiring the said defendants to fill in and compact with soil similar to that originally removed so that the same is restored to its pre-existing natural level that portion of the drain (east ditch) for a distance of two hundred yards from the point where said 17 Acre Lake normally would overflow.

The defendants had brought into this action several of the upper landowners as third-party defendants. The trial court found that the third-party plaintiffs had failed to prove any of their allegations and dismissed the third-party complaint. The defendants had also appealed from this judgment. When the case was argued before this court, the attorney for the defendants conceded that there was no evidence in the record upon which liability could be predicated against the third-party defendants. We have reviewed the record and agree that there is no evidence to establish any liability concerning the third-party defendants, and therefore will affirm the judgment dismissing the third-party complaint.

The defendants Peder Haugaard and Harold Jensen had filed counterclaims against the plaintiffs praying for damages and injunctive relief, which counterclaim was dismissed by the trial court. The defendants Haugaard and Jensen had also appealed from this part of the judgment. We have reviewed the evidence and find no evidence of any damages that these parties have sustained, and therefore concur with the trial court's judgment dismissing the counterclaim of these two parties.

For the reasons stated, the portions of the judgment providing for injunctive relief are being modified in accordance with this opinion, and as modified will be affirmed, and that part of the judgment granting damages against the defendants is being reversed, and that part of the judgment dismissing the counterclaim of the defendants Peder Haugaard and Harold Jensen is affirmed. Likewise, the judgment dismissing the third-party complaint of the defendants against the third-party defendants is affirmed.

Inasmuch as this is an equity action, and we have affirmed a part of the judgment, modified parts of it, and have reversed parts of it, no costs will be allowed to any of the parties.

STRUTZ, C. J., and TEIGEN, ERICKSTAD and PAULSON, JJ., concur.

KNUDSON, J., deeming himself disqualified did not participate; ADAM GEFREH, Judge of the Third Judicial District, sitting in his stead.