PAUL J. LAPUZZA ET AL., APPELLEES, V. HENRY F. SEDLACEK ET AL., APPELLANTS.

353 N.W.2d 17

Filed August 10, 1984.    No. 83-507.

Joseph E. Jones of Fraser, Stryker, Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for appellants.

Thomas J. Young, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, SHANAHAN, and GRANT, JJ.

GRANT, J.

Plaintiffs, Paul J. and Mary L. LaPuzza, filed this law action for damages against defendants, Henry F. and Marlene Sedlacek, in the municipal court of the city of Omaha. The municipal court, after trial, entered judgment in favor of Sedlaceks and dismissed the petition. LaPuzzas appealed to the district court for Douglas County, where that judgment was reversed and judgment in the amount of $1,460 was entered in favor of LaPuzzas against Sedlaceks. Sedlaceks appeal to this court. We reverse and order the judgment of the municipal court reinstated.

The parties are neighboring landowners whose backyards abut. Sedlaceks' home was built in 1955, and Sedlaceks have lived there since February of 1973. LaPuzzas' home was built in 1955, and LaPuzzas have lived there since 1976.

Sedlaceks' lot, located to the west of LaPuzzas' lot, is higher than LaPuzzas', and surface water drains to the east from Sedlaceks' lot onto the LaPuzzas' lot. The LaPuzzas' lot is basically flat. A single-tier retaining wall (built, so far as LaPuzzas knew, in 1955 when the home was built) was in place when LaPuzzas purchased the home in 1976. This wall was constructed of "river rock" and ranged from 1 foot to 7 feet in height. This wall ran parallel to the property line and some distance inside that line and on the LaPuzzas' lot. Mr. LaPuzza testifed that this wall collapsed in 1978 during a rainstorm while surface water was draining from Sedlaceks' lot over the wall and onto LaPuzzas' lot. Mr. Sedlacek testified that he did not know the wall ever collapsed but that he knew the wall was deteriorating. In 1978 the original wall was removed by the LaPuzzas and a new two-tier wall was constructed slightly to the west of the original wall and thus closer to the property line.

In June 1982 the two-tier wall collapsed. Expert testimony, adduced by the LaPuzzas, attributed the collapse to the flow of surface water from the Sedlaceks' lot. The municipal court found: "Plaintiff [LaPuzzas] alleges no diversion by defendant, and none has been shown. Plaintiff alleges defendant has a duty under the law to divert. No law exists to so require diversion. The evidence is conclusive that the water flow was normal in all respects." The municipal court thus determined as a matter of law that Sedlaceks owed no duty to LaPuzzas and dismissed LaPuzzas' petition.

On appeal the district court, without elaboration, found that the municipal court had "committed error which was prejudicial to the rights of the Plaintiffs, and the verdict and judgment of the Court below should be reversed." The district court thus determined as a matter of law that Sedlaceks did owe a duty to LaPuzzas and had violated such duty.

In Nebraska surface water is defined as water which appears upon the surface of the ground in a diffused state, with no permanent source of supply or regular course, which ordinarily

results from rainfall or melting snow. *Grint v. Hart*, 216 Neb. 406, 343 N.W.2d 921 (1984). In the present case it is undisputed that the source of the water involved is surface water.

LaPuzzas insist that the Sedlaceks have a duty to divert the surface water flowing down from their land and to arrange for the safe passage of the surface water over LaPuzzas' land. No such duty exists under Nebraska law. An owner may collect surface water, change its course, pond it, or cast it into a natural drain without liability. He may not, however, collect such waters and divert them onto the lands of another, except in depressions, draws, swales, or other drainageways through which such water is wont to flow in a state of nature. *Jameson v. Nelson*, 211 Neb. 259, 318 N.W.2d 259 (1982). Once a landowner diverts surface water and upsets the natural flow, he has a duty to do so reasonably and avoid damage to his neighbor. However, there is no affirmative duty to divert the natural flow away from one's neighbor even if it is causing damage in its natural state.

The uncontroverted testimony of Mr. Sedlacek was that he had never done anything to alter the natural flow of surface water from his lot to LaPuzzas' lot. There is no showing that Sedlaceks changed the configuration of their house in any way, such as adding or changing gutters or eaves. In short, Sedlaceks have done nothing affirmatively to affect the LaPuzzas in any way, and therefore Sedlaceks have done nothing to incur any liability to LaPuzzas.

Insofar as LaPuzzas contend that Sedlaceks must do something to change the natural flow of the surface waters, that proposition has been answered squarely in *Jorgenson v. Stephens*, 143 Neb. 528, 534-35, 10 N.W.2d 337, 340 (1943), where we stated:

> To require defendant, as plaintiff prays, to provide an unnatural and artificial outlet for his surface waters which would carry it away before reaching the land of plaintiff would be both an innovation in our law and a stumbling block in the path of progress and the development of urban real estate. If such a rule were adopted development of rolling or hilly urban real estate would entail the oppressive burden, for each upper parcel, of providing for

dispersion and disposal of surface waters through outlets other than over lower parcels within and without the area of the development. In other words urban development, except on level areas, would be arrested by the burden of overcoming the operation of the law of gravity.

We recognize that LaPuzzas have been injured. The remedy for that unfortunate situation has also been set out in *Jorgenson v. Stephens, supra* at 535, 10 N.W.2d at 340, where we said, "Under the record here the plaintiff must be left to her own resources to, reasonably and without negligence, protect her property from the surface water coming from the property of the defendant, if she would have protection therefrom."

The judgment of the district court is reversed and the cause remanded with directions to reinstate the judgment of the municipal court.

REVERSED AND REMANDED WITH DIRECTIONS.

CAPORALE, J., participating on briefs.