JOHN TODD, APPELLANT, V. YORK COUNTY ET AL., APPELLEES.

FILED JUNE 30, 1904   No. 13,214.

1. **Waters:** DRAINAGE. An owner has the right to protect his land from surface water, and, in the interest of good husbandry, to drain lagoons or basins thereon of a temporary character by discharging such surface waters by means of artificial channels into a natural surface water drain on his own property and through such drain or channel on and over the land of another, provided such person acts in a reasonable and careful manner and without negligence, and the injury, if any, resulting therefrom to such lower proprietor by reason of the increased flowage in the natural surface water drain will be accounted *damnum absque injuria.* For negligence in the manner of accomplishing the improvement, such owner is responsible and accountable to those injured by his negligent acts.

2. **Liability for Damages.** An owner's right to discharge surface water from his premises does not extend so far as to permit him to collect it in a volume and by means of an artificial channel discharge it upon another's land, contrary to the natural course of drainage, to the latter's damage and detriment.

APPEAL from the district court for York county: BENJAMIN F. GOOD, JUDGE. *Affirmed.*

*Meeker & Wray,* for appellant.

*F. C. Power* and *Charles F. Stroman, contra.*

HOLCOMB, C. J.

An injunction was applied **for** to restrain defendant from diverting surface water onto plaintiff's premises, and, from an order denying the application and dismissing

the action, the latter appeals. The plaintiff and defendant own adjoining quarter sections of land with a public highway running between. The plaintiff's land lies to the west of the defendant's, the county occupying its land as a "poor farm." A liberal quotation from the decision of the trial court will conduce to a more intelligent understanding of the case and of the legal propositions to be considered. What is there said is fairly reflected by the record. Says the trial court: "North and west of Todd's land a draw has its source which runs diagonally across the northeast corner of his land, crosses the public road and enters the land of the county well to the north side. This draw runs in a southerly direction for more than 60 rods upon the county farm, and then bears to the southwest across the public road, and then runs across the southeast corner of Todd's land, and from thence into Beaver creek, 4 or 5 miles distant. This draw is the natural surface drainage for more than 400 acres of land before it enters the county farm. Its bed is generally crossed in farming the land in and on either side of it. The east half of the county farm is low, and near its center is some basin land upon which the surface water naturally runs from 60 or 70 acres of surrounding land. Between this basin or low land and the draw west of it, there is a rim or ridge which would prevent the water from finding its way into the draw. About twelve years ago the then owner of the county farm dug a ditch or drain from this low land in a westerly direction through the ridge and into the draw, the ditch at its deepest point being about four feet. This ditch enters the draw at a point about 15 rods east of plaintiff's land. The county purchased its farm about three years since and has opened and cleaned the ditch, so that the basin land on the east side of its farm is drained into the draw and thence through plaintiff's farm. None of the water in the basin would find its way into this draw but for the ditch above mentioned. In wet seasons the flow through the draw is appreciably increased and it continues to flow longer than it did before the opening of

Todd v. York County.

the ditch. This action was begun to enjoin the county and its officers from draining its low land into the draw. The plaintiff claims that his land has been injured in value by reason of the construction and maintenance of the ditch. The defendant claims that it has a lawful right to make use of this natural surface drainage for its own benefit. The facts are practically undisputed, and in view of the holding of our supreme court, it is believed that the issue is wholly one of law. It was neither alleged nor proved that the county was negligent in the construction or maintenance of the ditch, and the question for determination is, whether one may conduct surface water into a draw on his own premises and thus increase the flow of the draw to the injury of his neighbor. Whatever may be the rule in other jurisdictions, it is well settled that the proprietor of lands may by a proper use and improvement upon them deflect surface waters; and for consequent damages to his neighbor he is not liable in the absence of negligence." The surface water sought to be deflected in the manner complained of does not constitute a lake, pond or lagoon of a permanent character. In seasons when the precipitation is above normal and in the more rainy periods of the year, water collects therein and so remains for a period of time. In the drier portions of the year, by evaporation and percolation, the water passes off, leaving the land dry as other portions thereof. It is, as we understand the record, not denied but that the means resorted to by the defendant for the purpose of reclaiming the basin or swamp land on its premises and relieving it of the accumulation of surface water which would otherwise collect thereon are the most appropriate and best calculated to accomplish the desired result. While there are allegations in the pleadings tending to raise an issue as to whether the natural drainage is toward the draw and in the direction of the course of the artificial drain, and whether the methods adopted are reasonably well calculated to effectuate with the least possible injury the reclamation of the swamp or basin land, yet the evidence

17

clearly supports the inference that the improvement as it was undertaken is the practical, most natural, and reasonable plan that could be adopted. No inference of negligence or improper adoption and execution of plans in reclaiming the land sought to be relieved of the surface water collected thereon can be drawn from any of the evidence appearing in the record. It is the contention of counsel for plaintiff that, wholly aside from any question of negligence, it is an actionable wrong for the defendant to collect in the artificial drain constructed by it the waters draining naturally into the basin or low lying land on its own premises and discharge them into the draw running through its own land and thence through such draw on the premises of the defendant. This, it is claimed, is a wrongful invasion of a well established right. Notwithstanding the rule of the common law as to surface water being regarded as the common enemy, say counsel, the doctrine does not extend so far as to permit one landowner to cast surface water in a body upon his neighbor's land and if he does so, he is liable for the injury sustained. The draw or ravine into which the surface water from the basin on the defendant's premises is drained, is not a watercourse in the technical sense of the term. It is, however, unmistakably a natural waterway or channel in which surface water is collected and flows to its mouth, and affords an outlet for all the water naturally draining therein from the surrounding country into Beaver creek, a natural watercourse, where it finds its way some four or five miles distant. The draw in question is a natural surface water channel, not of course having a sustained flow nor any permanent source of supply. It carries to the creek the surface water after each recurring rain or the melting of snow and then becomes dry. It has not a worn channel cut in the soil and its bottom is grown over with grass when not in cultivation. It is one degree removed from natural watercourses according to their technical signification. The defendant's land lies within the territory drained by the draw in question; that is, the

surface water falling thereon naturally finds its way into
this draw and thence into the stream into which the
draw empties.  The part of defendant's land sought to be
reclaimed has no natural outlet.  It is a basin, and the
natural drainage is toward the center thereof.  The basin
acts as a receptacle for the surface water falling on 60 or
70 acres.  If, however, the basin were filled up or if
drained of its accumulated water, the natural drainage
would be toward and into the draw passing through and
over a part of the defendant's land and on and over the
land of the plaintiff.  Good husbandry is promoted by the
reclamation of this waste land and using it for tillage pur-
poses.  But for its wet character because of the conforma-
tion of the surface, the land would be as useful and valu-
able as other farm lands in the immediate vicinity.  If it
is not permissible to drain the waters off and into the
draw, and thereby improve the land for agricultural pur-
poses, then defendant must permit the land to lie and
remain useless and the water to stand and remain there-
on, except as it may pass off by evaporation or percolation.
Under facts and circumstances such as narrated, is it an
infringement of the rights of the plaintiff by an artificial
channel to drain the water from the swamp land of the
defendant into the draw passing through its premises and
there permit it to flow down and over the defendant's
lands?  In other words, by adhering to the natural course
of drainage may the surface water draining into the draw
be increased to the extent necessary to drain the 65 or 70
acres which would otherwise flow into the basin on de-
fendant's land and there remain?  It may be conceded that
some injury results to the proprietor of the lower estate
by reason of the increased flow of surface water thus
drawn on his land, and the direct question is whether the
law affords him a remedy or whether it is an injury
*damnum absque injuria.*  Surface water is regarded as
the common enemy which every proprietor may fight or get
rid of as best he may; and a landowner may expel from
his land all mere surface water in draining his soil for

agricultural purposes, and an adjoining landowner will have no right of action by reason of such diversion. Gould, Waters (3d ed.), sec. 265 and authorities cited. The above rule, like all others, has its exceptions and limitations. Another rule well established and related to the first is that a landowner has no right to rid his land of surface water by collecting it in an artificial channel and discharging it upon an adjoining proprietor. To do so would violate elementary principles of justice. The adjoining proprietor's land ought not to be made to bear a burden naturally belonging to the other estate. But it is said a landowner may drain his land by artificial ditches and thereby cause the water to pass more rapidly and with increased volume onto the adjacent land of the lower proprietor if the same water would not naturally flow in a different direction and he acts with the proper regard for his neighbor's welfare. Gould, Waters (3d ed.), sec. 271. From these rules of general application and the prior decisions of this court touching the doctrine of surface waters, has the plaintiff brought himself within the rule and the reason of it and is he entitled to an order perpetually enjoining the defendant from maintaining the artificial ditch constructed for the purpose of reclaiming and utilizing for agricultural purposes the land drained thereby? In *Davis v. Londgreen*, 8 Neb. 43, an early case in this court, it is held that: "The owner of a natural pond or reservoir wherein the surface water from the surrounding land accumulates, and from which it has no means of escape except by evaporation or percolation, cannot lawfully, by means of a ditch, discharge such water upon the land of his neighbor, to his injury." It is apparent from a reading of the opinion in that case that what the court in fact decided was that the surface water on the upper estate could not be collected in an artificial channel and thrown on the land below there to remain, or to cut a channel for. itself to some lower level. The principle enunciated may be considered as the accepted common law rule relating to the deflection of surface waters, and is and has been the

doctrine obtaining in this state since its first announce-
ment.  The allegation in the petition in that case on
which the right to relief was predicated, as disclosed by
the opinion, was that the water drained through the arti-
ficial channel spreads over and into several acres of culti-
vated land and renders the same not cultivable and unfit
for use; that it had begun to cut a watercourse and that
the natural result from such ditch "is to cause all the water
accumulating in said pond after each rain, and in the
spring season, to flow over, into, and across the said land
of plaintiff, thereby rendering the same wholly unfit for
tillage, and to cut said watercourse across plaintiff's land
of greater depth and width each time said pond is
drained."  The *Londgreen* case was followed in *Fremont,
E. & M. V. R. Co. v. Marley,* 25 Neb. 138.    It is there
again held, that a party has no right to collect surface
waters in a ditch and permit them to flow on the land of
another without the latter's consent.  *Gregory v. Bush,*
64 Mich. 37, 31 N. W. 90, was in the case last referred to
cited and quoted from approvingly wherein it is said by
the supreme court of Michigan: "One has a right to
ditch and drain and dispose of the surface water upon his
land as he sees fit; but he is not authorized to injure, by
so doing, the heritage of his neighbor.  He cannot collect
and concentrate such waters, and pour them through an
artificial ditch in unusual quantities upon his adjacent
proprietor."  In the latter case decided by this court, as
in the former, the question for consideration was the
throwing of unusual quantities of surface water by means
of artificial channels on the lower proprietor's land where
it rested or found its way gradually to some lower level.
In neither of these two cases was the question here pre-
sented, considered or decided.  The right to the use of a
natural surface waterway or channel in carrying off sur-
face water or to increase its flowage by the drainage
through artificial channels of ponds and lagoons of a tem-
porary character did not enter into the consideration of
either case, and in each it was very properly decided that

the lower proprietor should be protected from an invasion of a substantial right by throwing unnecessarily and in unusual quantities accumulated surface waters on the lower land to its damage and detriment. The act complained of and the wrong relieved against, was the burdening of the lower estate, and where the relief of one could be accomplished only by the imposition of a like burden on the other. Where there are two estates otherwise equally favorably situated by nature, and one is burdened by an accumulation of surface water in a pond or lake, it is difficult to conceive of any sound principle of justice which would permit the estate so burdened to be relieved by collecting in an artificial ditch such surplus waters, and casting them upon the land of the lower proprietor to his damage and detriment. Each proprietor takes the land as nature has formed it, and one ought not to improve his estate solely at the expense of his more fortunate neighbor. In the case at bar, strictly speaking, the defendant does not collect the accumulated surface water and by means of artificial channels cast it on the land of the lower proprietor. What it does, in fact, is to drain the basin on its own land by an artificial channel into a draw or natural waterway for surface water passing over its land, where the water flows according to the natural course of drainage over the lands of the lower proprietor, thereby increasing the flow of the surface water channel to the extent of surface drainage on 65 or 70 acres of land. It is argued that the natural course of drainage is toward the center of the basin on defendant's land, and therefore it cannot be said that the artificial drainage only expedites the flow of surface water which would otherwise find its way into the draw and onto plaintiff's land. What in fact is done, say counsel, is to divert into a new channel and in a different direction, contrary to the natural course of drainage, the surface waters collected in such basin and that such a drainage of surface waters is opposed to all the rules governing the control and deflection of surface waters. We do not regard the argument as wholly sound.

Of course the drainage is toward the center of the basin. This, however, may be said of thousands of depressions in the surface of land in any specified territory drained in one general direction and into a certain surface water drain. Yet one would not seriously argue that such depressions could not be filled or drained by ditches, and yet the waters therefrom would continue to flow according to the natural course of drainage. The territory immediately surrounding the basin except as modified by the basin itself drains into the draw passing over plaintiff's land. The draw is the natural outlet for the surface water falling in that territory and is the natural outlet for the basin and the land drained into it if it is to have any outlet at all. Treating the basin and the land drained into it as an independent watershed, then counsel's position is right; but viewing the land, as we think should be done, as having a natural drainage into some permanent lake or other similar body of water, or into a regular watercourse by means of surface water channels, the territory in question properly and naturally drains into the draw spoken of and thence into Beaver creek, a natural watercourse. In *Rath v. Zembleman*, 49 Neb. 351, a case decided in 1896 and upon a record presenting an almost identical state of facts as in the case at bar, after reviewing the prior decisions, it is by the court held, "In an action for damages alleged to have been caused by the drainage of surface water from a pond on defendant's land into a draw, by which such water was conducted to and across the land of plaintiff, an admission by plaintiff that the draw was a natural waterway and had, since his ownership of the land claimed to have been damaged, been such a waterway, and that the water generally from that portion of the country had flowed through this ravine, precluded the possibility of a recovery of damages for the destruction of grass in the bed of such draw on his premises caused by the additional flowage resulting from the aforesaid drainage." RYAN, C., writing the opinion of the court, says: "On the trial it was admitted by the plaintiff, in open court, that

the draw through which the water flowed from the defendant's land to and across plaintiff's, was a natural waterway running from Clay county, and that it had been such ever since the plaintiff had occupied his premises, and that the waters from that country were drained through this ravine or draw and ran down through plaintiff's land. In view of the holdings of this court since the trial of this case, announced in *Anheuser-Busch Brewing Ass'n v. Peterson*, 41 Neb. 897; *Morrissey v. Chicago, B. & Q. R. Co.*, 38 Neb. 406; *Lincoln & B. H. R. Co. v. Sutherland*, 44 Neb. 526; *City of Beatrice v. Leary*, 45 Neb. 149, and *Jacobson v. Van Boening*, 48 Neb. 80, the plaintiff in no event could have recovered damages in the face of his admissions as to the flowage and the character of the waterway which it followed." The principles underlying the decision in the case cited and in the one at bar are almost if not quite the same. In fact the two cases cannot well be distinguished. If the injury to the hay in the draw because of the drainage therein of surface water by means of ditches afforded no ground of recovery, then the increased flowage in the case at bar, by reason of the drainage of the basin, cannot justify an injunction against its further continuance. We can hardly escape the conclusion that the *Rath-Zembleman* case must necessarily govern us in the disposition of the one at bar unless it may be said that the case ought not to be followed. The decision is based expressly upon the authority of the prior holdings in this jurisdiction. An examination of these several decisions warrants the conclusion that in this jurisdiction the rule is, the drainage of mere surface water collected from rains and melting snows in lagoons or basins, when done without negligence, and for the purpose of reclaiming what would otherwise be waste land, in the interest of good husbandry, by an artificial channel and according to the natural course of drainage, may be accomplished by diverting such waters into a natural surface waterway or channel on the owner's land where it finds an outlet in a stream or natural watercourse, and that the injury, if any,

resulting to a lower landed proprietor over whose land it flows is incidental only and for which no damages will accrue nor relief be awarded by enjoining a continuance of the drainage of such surface water by the method resorted to for that purpose. The authorities cited in the opinion of the case last referred to fairly support the proposition stated in the syllabus. *Morrissey v. Chicago, B. & Q. R. Co., supra,* was a case involving the right to deflect surface water in the construction of a railroad embankment, and it is held, following the common law rule, that where such an embankment is not negligently constructed and it deflects or throws back surface water from its natural course, the railroad company is not liable in damages to the proprietor of neighboring lands thereby incidentally overflowed and injured. A large number of authorities are reviewed in the opinion. Among others, *Gannon v. Hargadon,* 10 Allen (Mass.), 106. In that case it is said: "The obstruction of surface water or an alteration in the flow of it affords no cause of action in behalf of a person who may suffer loss or detriment therefrom against one who does no act inconsistent with the due exercise of dominion over his own soil. * * * A party may improve any portion of his land, although he may thereby cause the surface water flowing thereon, whencesoever it may come, to pass off in a different direction and in larger quantities than previously. If such an act causes damages to adjacent land, it is *damnum absque injuria.*" *Anheuser-Busch Brewing Ass'n v. Peterson, supra,* announces the principle just alluded to in the fifth paragraph of the syllabus, wherein it is stated: "Every proprietor may lawfully improve his property by doing what is reasonably necessary for that purpose, and unless guilty of some act of negligence in the manner of its execution will not be answerable to an adjoining proprietor, although he may thereby cause the surface water to flow onto the premises of the latter to his damage." The next paragraph declares: "But if in the execution of such enterprise he is guilty of negligence, which is the natural and proximate

cause of injury to his neighbor, he is accountable therefor." *Lincoln & B. H. R. Co. v. Sutherland, supra,* reiterates that the doctrine of this court is the rule of the common law that surface water is a common enemy and that an owner may defend his premises against it by dike or embankment, and if damages result to adjacent proprietors by reason of such defense he is not liable therefor. It is said, however, "The rule is a general one and subject to another common law rule, that a proprietor must so use his own property as not to unnecessarily and negligently injure his neighbor." In that case a railroad company was held legally responsible and liable for constructing its roadbed and embankment over a draw where surface water produced by rains and melting snow were wont to run from the surrounding territory and thence into the Platte river, without making provision for a culvert or opening through the embankment over such draw for the escape of waters flowing naturally therein. The same principle was again enunciated and adhered to in *City of Beatrice v. Leary, supra,* where the act of negligence, for which a recovery was allowed, consisted in the obstruction of a draw through which flowed surface water, resulting in the overflowing of the land of an adjacent proprietor. In *Jacobson v. Van Boening, supra,* the former decisions of this court were exhaustively reviewed and were declared to be harmonious and to rest upon the principles announced in the syllabus in that case. It appears from the opinion that an injunction against diverting surface waters collected in ponds and lagoons of an upper proprietor and throwing them on lower lands was granted and made perpetual, but solely on the ground that the plan adopted for the diversion of such waters was not the most reasonable and practical method of reclaiming the land sought to be relieved from such surplus waters, and that such plan unnecessarily burdened the plaintiff's land in that action with an increased flow of surface water by reason of the construction of the artificial channels or ditches constructed for such pur-

pose. In the opinion it is said: "The damage alleged is that whereas the natural drainage from the lagoons is southeast, these ditches divert it to the north and thence along the highway of the draw, discharging a large body of water thereby across plaintiff's land, cutting trenches and covering the land with accretions. It also appears that by the construction of a ditch much shorter than the one now maintained, the defendant might discharge the water from the lagoons into this same draw upon his own land." Again, it is said by the author of the opinion, after discussing other matters: "With these preliminary matters cleared away, the question remains whether the plaintiff was entitled to relief against the defendant for discharging surface water through a ditch, in a volume, upon plaintiff's land, contrary to the natural course of drainage; and the proof showing that as effective and as convenient a method of discharging water might have been availed of without discharging it on the highway or on plaintiff's land." See also *Churchill v. Beethe,* 48 Neb. 87, and *Gilmore v. Armstrong,* 48 Neb. 92. The supreme court of Illinois, in *Peck v. Herrington,* 109 Ill. 611, holds to the doctrine that "The owner of land upon which there is a pond, in which is collected the surface water, only, from rains and melting snow, when good husbandry so requires may drain the same by an artificial drain constructed upon his own land, whereby its water is thrown into the same outlet or natural drain it was accustomed to take before, when the pond was full, notwithstanding the flow of the water over a servient tract of land may thereby be increased." The same court in *Anderson v. Henderson,* 124 Ill. 164, again announces the same doctrine and holds to the rule that the drainage of surface water by ditches and drains into the natural and usual channels which nature has provided, even if the quantity of water thrown upon the next adjoining landowner is thereby increased, does not give rise to a cause of action. *Hughes v. Anderson,* 68 Ala. 280, declares the rule to be that "The owner of lands has a right to drain them by

artificial ditches, although thereby the water is precipitated more rapidly, and in greater volume on the lands of an adjacent proprietor below, provided he does not thereby cause water to flow on the lands of such adjacent proprietor, which, in the absence of the ditches, would have flowed in a different direction, and provided he acts with a prudent regard for the welfare of his neighbor." In *Sheehan v. Flynn,* 59 Minn. 436, 61 N. W. 462, it is declared in the first paragraph of the syllabus that "The old common law rule that surface water is a common enemy, which each owner may get rid of as best he can, is in force in this state, except that it is modified by the rule that he must so use his own as not unnecessarily or unreasonably to injure his neighbor. Under this rule, it is the duty of an owner draining his own land to deposit the surface water in some natural drain, if one is reasonably accessible; and, he is entitled to deposit the same in such natural drain, though it is thereby conveyed upon the land of his neighbor, if it does not thereby unreasonably injure him." The doctrine thus announced is in the main the same as held to in this jurisdiction.

The common law rule as to the control and disposition of surface water is in force in this state. In fighting the common enemy, however, the rights of other landed proprietors are to be regarded. The upper proprietor may not act in a negligent manner. He may by artificial channels drain mere surface waters accumulated in ponds, lagoons or basins and throw them in greater quantities into a natural surface water channel or draw and onto an adjoining estate, even though the flow in such natural drain is thereby increased on and over the lower estate. He cannot divert the water in a different direction but must conduct it according to the natural course of drainage, and when such is done there is no legal wrong committed.

The following principles are, we think, fairly deducible from the authorities cited: 1. An owner has the undoubted right to protect his land from mere surface water and, in the interest of good husbandry, to drain lagoons or basins

thereon of a temporary character, by discharging such surface waters by means of artificial channels into a natural surface water drain and through such drain or channel on and over the land of another, provided such person acts in a reasonable and careful manner and without negligence, and the injury, if any, resulting therefrom to such lower proprietor by reason of the increased flowage in the natural surface water drain will be accounted *damnum absque injuria.* For negligence in the manner of accomplishing the improvement, such owner is responsible and accountable to those injured by his negligent acts.

2. An owner's right to discharge surface water from his premises does not extend so far as to permit him to collect it in a volume, and by means of an artificial channel discharge it upon another's land contrary to the natural course of drainage to the latter's damage and detriment.

The conclusion reached by the district court, as evidenced by its judgment, is supported by the prior decisions of this court, and is in harmony with the general principles governing the control of surface waters, and the same, therefore, should be, and accordingly is,

AFFIRMED.