Virgil SKAGGS and Louise Skaggs, Plaintiffs-Respondents,

v.

The CITY OF CAPE GIRARDEAU, Missouri, a municipal corporation, and Dorothy Rickard, Defendants,

The City of Cape Girardeau, Missouri, a municipal corporation, Defendant-Appellant.

No. 33929.

St. Louis Court of Appeals, Missouri.

Oct. 26, 1971.

Howard C. Wright, Jr., City Atty., Cape Girardeau, for appellant.

Briney, Welborn & Spain, Joe Welborn, James E. Spain, Bloomfield, McHaney & Welman, Gary B. Ryan, Kennett, for respondents.

Manuel Drumm, Sikeston, for defendant Rickard.

WEIER, Commissioner.

This is a suit for damages to real property caused by collecting surface water and casting it in concentrated and destructive quantities at one point onto plaintiffs' land. From a verdict and judgment against it in the sum of $3,000.00, defendant City of Cape Girardeau has appealed.

In a hilly area of the City of Cape Girardeau, Adeline Avenue runs east downhill to end in a T-type intersection with a north-south street, named East Rodney Drive. The intersection is at or near the lowest point on this portion of East Rodney Drive, which rises to a higher elevation both north and south of Adeline. Surface water from a watershed of 4.2 acres in area runs downhill east on Adeline and from both north and south on East Rodney to collection basins on either side of East Rodney at points adjacent to the intersection. After being there collected, it pours out through a concrete tile into an open ditch on the right-of-way east of the paved portion of East Rodney. From this point, the water enters an open drain maintained by defendant Dorothy Rickard near the northwest corner of her lot. Then it flows in a direct line east along the north side line of her lot, half the length of the lot in a brick-lined drainway and the rest of its journey in a low open drainway planted with grass to her real property line. At or near her northeast corner, the water flows onto the rear of the lot belonging to plaintiffs, Virgil Skaggs and Louise Skaggs, his wife.

Mr. and Mrs. Skaggs purchased their property in 1961. It consists of a lot 50 feet wide and 150 feet long from west to east. On the lot, at the time plaintiffs bought it, was a five-room house, with full basement, 24 feet by 40 feet in size. The house sits with its longest dimension across the lot and faces Rodney Vista Boulevard, which is east of and parallel to East Rodney Drive. Plaintiffs established through their evidence that the elevation of their home was some 10 to 15 feet lower than East Rodney to the west and that it lies in a valley which descends eastwardly from East Rodney down to their house.

Mr. and Mrs. Skaggs date their trouble from the completion of a street improvement program of the city in the early summer of 1963, which brought about the paving of the surface of East Rodney Drive. Prior to its resurfacing, East Rodney was a 20-foot asphalt surfaced street, with side ditches. The ditches ran down to the intersection of Adeline and the water was discharged on the east side near the Rickard property, at the same location where the concrete tile was later placed. Although the surface water flowed to the same point before the paving of East Rodney, Mr. Skaggs testified that the water from the roofs of houses and the streets was largely absorbed in the ground. At that time Skaggs' back yard on occasions had a small amount of water in it, which he characterized as a "natural waterfall." But after East Rodney was paved with concrete 30 feet wide and curbed, a stream of water 10 to 12 inches deep would come down across the Skaggs yard, running over the basement window wells and partially filling the basement from 4 to 6 inches. Since the completion of the curbing, rain that falls on the roofs of houses on East Rodney drains out to the street through holes in the curbing. After being gathered in the street, it then runs to the collection basins. Thence the water flows into the Rickard drainway, but with increased volume. After travelling through the Rickard lot and across the rear of the Skaggs lot, some 150 to 200 feet, it passes the Skaggs house and flows down to the street in front of their house, Rodney Vista Boulevard.

In 1967 the plaintiffs filed this suit against the City of Cape Girardeau and Dorothy Rickard for damages. As to the

city, the petition alleged that it accumulated, collected and impounded water on East Rodney Drive and then discharged it in concentrated and destructive quantities by means of a culvert onto the lands of defendant Rickard. It then alleged that defendant Rickard constructed a ditch on her property, lined it with bricks, and collected the water so impounded by the city and also additional water and discharged it in concentrated and destructive quantities onto the Skaggs property. At the close of plaintiff's evidence, defendant Rickard moved for a directed verdict, which motion was sustained. No appeal was taken from this ruling by the plaintiffs. At the close of all the evidence, the city's motion for directed verdict was denied.

On appeal, Cape Girardeau contends that plaintiffs failed to make a submissible case, and, further, even if the evidence did establish a cause of action against it, plaintiffs' verdict-directing instruction was erroneously given to defendant's prejudice since it improperly stated the law. We first consider whether plaintiffs failed to make a submissible case. But to understand their submission and the theory upon which they tried their lawsuit, we quote their instruction:

### "INSTRUCTION NO. 1a

"Your verdict must be for the plaintiffs if you believe:

"First, plaintiffs are the owners of the property mentioned in the evidence, and

"Second, defendant collected surface water and cast it in concentrated and destructive quantities at one point onto the land of plaintiffs, and

"Third, as a direct result of such act plaintiffs' property was damaged,

"Unless you believe plaintiffs are not entitled to recover by reason of Instruction No. 3."

In essence, by this instruction, plaintiffs submit their case upon a theory of absolute liability for the collection of surface water and the casting of it in concentrated and destructive quantities at one point onto the land of plaintiffs. The rule established in this state is not so absolute. Missouri does not follow the civil law rule which prohibits the upper landowner from doing anything to change the natural system of drainage so as to increase the natural burden upon a landowner below him. Neither does it adhere to the common law rule that has been appropriately named the "common enemy doctrine", wherein, "as an incident to his right to use his own property as he pleases, each landowner has an unqualified right, by operations on his own land, to fend off surface waters as he sees fit without being required to take into account the consequences to other landowners, who have the duty and right to protect themselves as best they can." Annotation, Modern Status of Rules Governing Interference with Drainage of Surface Waters, 59 A.L.R.2d 421. The Missouri rule is rather a modification of the common enemy doctrine. For a discussion of Missouri case law, see Davis and Snodgrass, the Law of Surface Water in Missouri, 24 M.L.R. 137 and 281. As stated in the case of Haferkamp v. City of Rock Hill, Mo., 316 S.W.2d 620, 625, "without attempting to state precisely its limits it may be said that the rule is, in substance, that a landowner in the reasonable use and development of his land may drain it by building thereon sewers, gutters and such other artificial water channels for the purpose of carrying off the surface waters into a 'natural surface-water channel' (see Todd v. York County, 72 Neb. 207, 100 N.W. 299, 66 L.R.A. 561) located on his property without liability to the owner of neighboring land, even though such method of ridding his property of surface water accelerates and increases the flow thereof, provided that he acts without negligence, and provided further that he does not exceed the natural capacity of the drainway to the damage of neighboring property."

This rule applies to a municipal corporation as well as to an owner and developer of urban land. Haferkamp v. City of Rock Hill, supra, Mo., 316 S.W.2d 620, 629.

Plaintiffs' petition and the evidence in the case neither alleges nor discloses any act of negligence on the part of defendant city. As to exceeding the natural capacity of a drainway, plaintiffs' evidence does establish that the concrete tile leading from the two collection basins discharges the water from a watershed served by East Rodney Drive and Adeline Avenue. There is no evidence that the watershed of 4.2 acres was enlarged by the improvement of East Rodney. There is an increase in flow from the East Rodney tile. But as to how much of the increase of the flow on plaintiffs' land is contributed by the paving and curbing of East Rodney and how much by defendant Dorothy Rickard is unknown. Defendant Rickard, who was charged in the petition with collecting additional water and discharging it upon plaintiffs' property was directed out by the court on motion at the close of plaintiffs' evidence. What, if any, contribution she made to the volume of flow or whether she channelled surface water from other land in addition to that received from the city, is unknown. She was not called as a witness.

As to the matter of a natural drainway, evidence indicated Mrs. Rickard had a tree taken down and added more bricks to a water channel to keep water from washing out her property. Whether the drain constructed on her property followed an original water drainage channel or was changed by her, is undetermined.

Plaintiff Virgil Skaggs described his house as lying in a valley that ran down to his house from East Rodney. He had levelled off his lot when he moved in, but later with his neighbor Spain had opened a ditch to let the water through. Spain's lot, adjacent to the south line of the Skaggs lot, was higher and Spain's predecessor in title constructed a 12-inch concrete wall along the Skaggs boundary. The ditch which they opened was two feet wide, according to Mr. Skaggs, and as much as a yard and a half wide in some places, according to Mr. Spain. It measured up to one and one-half feet in depth in places. This ditch was apparently constructed or opened after Skaggs had levelled his yard and after the improvement of East Rodney Drive.

On the other hand, evidence produced by the city reflected that the Skaggs and Spain lots, each 50 feet wide, had at one time been owned as one tract by one owner and that down through the middle of this tract there had been a ditch or natural drainway which carried surface water. This water passed under Rodney Vista through a 24-inch drain in front of that portion of the lot later conveyed to plaintiffs and it still remained there at time of trial. The ditch was changed by a prior owner to the south side of the 100-foot-wide tract, but when plaintiff's house was being constructed in 1960 or 1961, the ditch was cut out and the lot filled and levelled. This evidence was not controverted, but, even disregarding it, we are still confronted with plaintiffs' evidence which strongly indicated that the natural drainage for the area of 4.2 acres west of East Rodney was down through the valley where plaintiffs' house was constructed and where their lot was lower in elevation than the lots on either side. As to what constitutes a natural drainway or watercourse, see Croley v. DeWitt, Mo. App., 431 S.W.2d 657, 658[2]; Annotation, What Constitutes Natural Drainway or Watercourse for Flow of Surface Water, 81 A.L.R. 262.

From the evidence adduced it would appear that defendant city did not change the natural flow of water by diverting it from another watershed, or by channelling it away from its natural drainage into another area and then onto plaintiffs' property. Rather, the evidence tends to establish that the city by improving the streets, and constructing gutters, sewers

and other artificial channels has accelerated and increased the rate of flow from the same area previously served by a less efficient drainage system to the lowest point of the watershed, where the water had previously flowed but at a slower pace. There is no evidence that the city changed or in any way tampered with the topography of the ground composing the watershed or any of the drainways or channels which led away from it. The essential facts, although not fully developed, are the same as *Haferkamp*, supra, insofar as they concern the affirmative acts of the city.

■■ It is apparent that, basing their recovery upon these facts, the plaintiffs have seized upon, just as plaintiffs in *Haferkamp*, supra, an incorrect and erroneous theory to recover from defendant. For liability is not imposed merely because defendant city may have collected surface water by the improvement of its street and thereby increased the volume and rate of flow which passed onto plaintiffs' property. Within the limit of the evidentiary facts that were developed at the trial, liability can be determined here only upon the negligence of defendant city, if its negligence be pleaded and proved, or upon the city exceeding the natural capacity of a drainway (which in itself seems to be an act of negligence), if one is shown to exist in the area of plaintiffs' property. Such additional facts must be established by the pleading and the evidence, and, if so established, must be hypothesized in plaintiffs' verdict-directing instruction, including in a negligence submission a determination that the defendant was thereby negligent.

■ Plaintiffs have adopted an incorrect theory of the law which they have incorporated in their verdict-directing instruction. For this error, we reverse. Rather than failing to make a submissible case after electing to proceed upon one of several correct theories, they have proceeded upon an erroneous theory of liability. Since the evidence does not establish that in no event plaintiffs could make a submissible case against the defendant city if the evidence in support of a correct theory was fully developed, we refuse to reverse and to direct the sustaining of the motion for directed verdict at the close of the evidence. Rather, we remand for new trial. Haferkamp v. City of Rock Hill, supra, Mo., 316 S.W.2d 620, 628[6, 7]. If the case be re-tried, plaintiffs must be conscious of the requirement that in the development of their theory they will have the burden of proof. Jones v. Des Moines & Mississippi River Levee District No. 1, Mo.App., 369 S.W.2d 865, 876[13].

■ Defendant city on appeal has complained of error in the ruling of the trial court sustaining the motion of defendant Rickard for directed verdict at the close of plaintiffs' case. A co-defendant in a tort case where liability may be joint or several is not an "aggrieved party" within the meaning of Section 512.020, RSMo 1969, V.A.M.S., merely because a court dismisses his co-defendant, and hence may not appeal from such a ruling. Stutte v. Brodtrick, Mo., 259 S.W.2d 820, 823[1].

Other alleged errors in instructions will doubtless not reoccur on new trial. We will, therefore, refrain from any comment on them.

The case is reversed and remanded.

PER CURIAM:

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the case is reversed and remanded.

BRADY, P. J., and DOWD, J., concur.

WOLFE, J., not participating.