Max H. FISHER and Carol Fisher, Plaintiffs-Appellants,

v.

KANSAS CITY, Missouri, Defendant-Respondent.

No. KCD26598.

Missouri Court of Appeals, Kansas City District.

Dec. 30, 1974.

Richard E. Duggan, Kansas City, for plaintiffs-appellants.

Roy F. Carter, Morris, Mitchell, Larson, King, Stamper & Bold, Kansas City, for defendant-respondent.

Before DIXON, C. J., and SHAN-GLER, WASSERSTROM and TUR-NAGE, JJ.

TURNAGE, Judge.

In this action plaintiffs' sought to recover damages from the City of Kansas City and a private developer resulting from the invasion of plaintiffs' basement by surface waters.

The trial court entered judgment for the developer, but submitted the case to the jury upon the issue of both actual and punitive damages against the City. The jury returned a verdict against the City for actual damages in the amount of $16,000.00 and punitive damages in the amount of $10,000.00. The trial court set aside its

judgment entered on these verdicts on the grounds of an error in plaintiffs' verdict directing instruction and also for error in submitting to the jury the question of punitive damages against the City of Kansas City.

Plaintiffs' evidence tended to show the plaintiffs' purchased a house and lot on Hamer Drive in that part of Kansas City, Missouri, located in Platte County. At the location of plaintiffs' lot, Hamer Drive ran in a general "U" shape from the west side of Bell Street. Bell Street ran north and south so that Hamer extended on the west of Bell. Plaintiffs' house was located on the east side of Hamer and was the second house from the north intersection of Hamer and Bell, facing Hamer Drive. The house at the north intersection of these two streets faced on Bell.

At the time plaintiffs purchased their house, the land on the east side of Bell was a cornfield and pasture. Thereafter, this land was developed by a private developer for housing and a street was installed which extended Hamer at its north intersection with Bell in an easterly direction across Bell to serve the new development.

Prior to the development of the land to the east of Bell, the natural drainage from that land flowed under Bell Street through a twenty-four inch culvert, then into a natural drainage ditch located on the south side of Hamer. This ditch ran west for a short distance, then turned south and flowed in a general south and westerly direction for a distance until it turned to flow directly west and thence continued on west running under Hamer Street and eventually emptied into Line Creek.

Plaintiffs had not experienced any difficulty with water overflowing the drainage ditch, which ran along the back of their lot, of any significance until August 22, 1970, after the development to the east of Bell was begun. On the occasion of plaintiffs damage, which forms the basis of this litigation, plaintiff Max Fisher stated the water flowing through the drainage ditch along his lot was of such quantity that it overflowed the ditch and ran across his level back yard into his basement. Plaintiff further stated a great quantity of mud was carried into this drainage ditch and also into his back yard and basement.

Plaintiffs' evidence would tend to show the reason for the ditch backing up was the size of the outlet through which this ditch ran under Hamer Drive. This had the effect of damming the water at that point and thus causing it to back up with the resultant flooding of plaintiffs' basement.

Plaintiffs' evidence further tended to show there had been some rearrangement of the land to the east of Bell pursuant to the development plans. Plaintiffs testified this caused more water to run into the natural drainage under Bell and then behind plaintiffs' house than flowed there prior to the beginning of the development.

Plaintiffs' theory of liability against the City was negligent design approval, installation and maintenance of the ditch sections draining the area being developed. The evidence showed the drainage plan for the development was made by an engineer hired by the developer and that such plans had been approved by the City and permits obtained for the construction.

The liability of the City in this situation has been fully discussed and established in Haferkamp v. City of Rock Hill, 316 S.W. 2d 620 (Mo.1958), and in Skaggs v. City of Cape Girardeau, 472 S.W.2d 870 (Mo. App.1971).

In both of these cases it is established that Missouri does not subscribe wholly to the common enemy doctrine of surface water, but rather to a modified version of this doctrine. The facts in the case at bar are similar to both of those cases in that both cases involved a natural drainage ditch or way being utilized to drain surface water from an area being developed. The evidence in those cases indicated the volume of water in the natural drainage-

way was increased as the result of the development, but the court held in *Haferkamp* the increase in the volume of surface water using the natural drain was not a ground of liability.

The court in *Haferkamp* stated 316 S. W.2d at page 625[4]: ". . . a land owner in the reasonable use and development of his land may drain it by building thereon sewers, gutters and such other artificial water channels for the purpose of carrying off the surface waters into a 'natural surface-water channel', (See Todd v. York County, 72 Neb. 207, 100 N.W. 299, 66 L.R.A. 561) located on his property without liability to the owner of neighboring land even though such method of ridding his property of surface waters accelerates and increases the flow thereof, provided that he acts without negligence and provided further that he does not exceed the natural capacity of the drainway to the damage of neighboring property". In *Skaggs* the court indicated that exceeding the natural capacity of a drainway would seem to be an act of negligence. There is no doubt the rule stated in Haferkamp consists of two parts, the first being the acceleration of the flow through a natural drainway and the second the exceeding of the capacity of the natural drainway.

■ This court agrees with the statement in *Skaggs* that it is negligence to exceed the capacity of the natural drainway and thus no further negligent act is required to be shown as against the City, once it is shown the City has caused the capacity in the natural drainway to be exceeded. Thus, plaintiffs' evidence that the flow through the natural drainageway adjoining his lot exceeded the capacity of such way would constitute negligence, if it were found to be caused or permitted by the City.

■ In this case, the court gave Instruction No. 4, which reads as follows:

INSTRUCTION NO. 4

Your verdict must be for plaintiffs and against defendant City of Kansas City, Missouri if you believe:

First, defendant City of Kansas City, Missouri issued a permit for the development of an area known as Clayton, a development in close proximity to the property owned and occupied by the plaintiffs; and

Second, defendant City of Kansas City, Missouri engineered and approved the installation of the sewer system in Clayton; and

Third, defendant City of Kansas City, Missouri was at all times responsible for the design, maintenance and installation of a proper drainage system to carry surface water from Clayton and the property of plaintiffs; and

Fourth, the conduct of defendant City of Kansas City, Missouri in the respects submitted in the preceding paragraphs was negligent; and

Fifth, such negligence either directly caused damage to plaintiffs or combined with the acts of· defendant Fairhills Company to directly cause damage to plaintiffs, unless you believe the plaintiffs are not entitled to recover by reason of Instruction Number 6.

(Not in MAI, combined with MAI 19.-01 and MAI 17.02 and MAI 17.01 modified by Plaintiffs)

The trial court sustained the City's motion for a new trial on the error of giving this instruction and the court cited in support of its ruling Moore v. Quality Dairy Company, 425 S.W.2d 261 (Mo.App.1968); and Esmar v. Zurich Insurance Company, 485 S.W.2d 417 (Mo.1972). It is apparent Instruction No. 4 violates the requirement that an instruction should set out the facts, supported by the evidence relied on, to show the acts of negligence. Here the instruction simply required the jury to find

the design, maintenance and installation was negligent without requiring the jury to find what acts or omissions the City committed which would make the design, maintenance and installation negligent.

However, more importantly, the plaintiffs misconceived the real ground of liability and that was the exceeding of the capacity of the natural drainway. On re-trial the plaintiffs should properly plead and prove this ground of liability as enunciated in *Haferkamp* and *Skaggs*, unless plaintiffs have other grounds of liability recognized in those cases.

■ It is clear the ruling of the trial court in sustaining the City's motion for a new trial, based on the error in giving Instruction No. 4, was correct both for the reason assigned by the trial court and for the reasons stated herein. What has been stated above disposes of the City's contention that it was entitled to a directed verdict for failure to show any liability on the City. As shown above, the existence of liability on the part of the City could be found on the basis of plaintiffs' evidence.

■ In their brief, plaintiffs questioned the propriety of the trial court in setting aside the award of punitive damages against the City. In so ruling, the trial court relied upon Chappell v. City of Springfield, 423 S.W.2d 810 (Mo.1968), which held there must be statutory authority to assess punitive damages against a city. However, in oral argument, plaintiffs' counsel conceded there is no statutory authority for assessing punitive damages against the City. Under the express holding in *Chappell*, the action of the trial court in setting aside the judgment for punitive damages was correct.

A collateral matter which requires disposition was raised by plaintiffs in a motion to dismiss the appeal filed by the City from the judgment of the trial court in overruling the City's motion for judgment filed with its motion for a new trial. Plaintiffs also point out in such motion the City has failed and refused to pay its share of the cost of the transcript prepared and filed in this case.

■■ The City has not filed an appellant's brief and thus has taken no further steps to perfect its appeal after the filing of its notice of appeal. The failure to file an appellant's brief is grounds for the dismissal of an appeal, Hunter v. Schwertfeger, 407 S.W.2d 606 (Mo.App.1966). For this reason, the City's appeal is hereby dismissed.

■ Rule 81.14(c) V.A.M.R. requires only one transcript in multiple appeals and each party is to pay his share of the cost. Under Rule 81.04 the appeal is taken by the filing of the notice of appeal with the clerk of the trial court. The rule providing that each party pay his share of the cost of the transcript in multiple appeals does not require the appeal to be fully perfected, but only requires the taking of the appeal to make him responsible for his share of the transcript costs. For this reason, the City is responsible for one-half of the cost of the transcript in this case.

The judgment of the trial court in granting the City a new trial on the issue of actual damages is affirmed with directions that the issue of punitive damages shall not be further considered. One-half of the cost of the transcript on this appeal is hereby assessed against the City.

All concur.