CENTRAL NATIONAL INSURANCE COMPANY, et al., Plaintiffs,

v.

CITY OF KANSAS CITY, MISSOURI, et al., Defendants.

The HOME INSURANCE COMPANY, Plaintiff,

v.

CITY OF KANSAS CITY, MISSOURI, et al., Defendants.

Nos. 79–1033–CV–W–8, 80–0021–CV–W–8.

United States District Court, W. D. Missouri, W. D.

Sept. 13, 1982.

Ronald K. Barker, Margolin & Kirwan, Kansas City, Mo., for plaintiff in No. 80–0021–CV–W–8.

Michael E. Waldeck, Niewald, Risjord & Waldeck, Kansas City, Mo., for plaintiffs in No. 79–1033–CV–W–8.

Walter J. O'Toole and Norma J. Webster, Asst. City Attys., Kansas City, Mo., for City of Kansas City, Mo.

Edward W. Mullen, Kansas City, Mo., for St. Louis-San Francisco Ry. Co.

Kent Snapp and Richard L. Martin, Johnson, Lucas, Bush, Snapp & Burgess, Kansas City, Mo., for Missouri Pacific R. Co.

## ORDER

STEVENS, District Judge.

In these two actions, a total of three insurance companies have sued the same three defendants: City of Kansas City, Missouri, St. Louis-San ·Francisco Railway Company, and Missouri Pacific Railroad Company. Plaintiffs are insurers of the General Motors Automotive Assembly Plant in Kansas City, Missouri, near the Blue River. On September 13, 1977, the General Motors Plant sustained flood damage in excess of six million dollars when the Blue River left its banks. Plaintiffs paid General Motors over five million dollars on the insurance policies, and they are now pursuing their rights of subrogation against those they contend are responsible for the damages sustained by their insured.

Pending when the cases were transferred to this division was the city's motion for summary judgment; thereafter, the defendant railroads filed separate but similar motions aimed at removing from both cases all common law claims asserted against them. The motions will be considered in the order filed.

## I. MOTION FOR SUMMARY JUDGMENT BY DEFENDANT KANSAS CITY, MISSOURI

Defendant, City of Kansas City, Missouri, has moved for summary judgment against all plaintiffs on all counts. The complaints against the city each contain separate counts alleging trespass, nuisance, and negligence, but the factual allegations upon which the counts are based are essentially the same. Therefore, the parties have organized their arguments on the motions according to the following five acts which are alleged as the bases for the city's liability:

A. Failing to Maintain the Blue River Channel from Mile Point 12.0 to the Missouri River

A municipality can be held liable for a breach of its duty to exercise ordinary care in maintaining sewers and drains. *Lucas v. City of Louisiana,* 173 S.W.2d 629, 634–35 (Mo.App.1943) (citing cases). *See*

*generally* 57 Am.Jur.2d *Municipal, School, and State Tort Liability* § 203 (1971). This duty extends only to drainage facilities which the municipality adopts as part of its drainage system or over which the municipality assumes control. *Id.* § 205. *See also Lucas,* 173 S.W.2d at 634–35; *Martinovich v. City of Sugar Creek,* 617 S.W.2d 515, 516 (Mo.App.1981). "The fact that the particular drain may be a natural watercourse rather than an artificial construction does not alter the rule of municipal liability for damage resulting from obstructions, so long as the municipality has adopted the sewer or drain for drainage purposes and assumed control over it." Annot., 59 A.L.R.2d 281, 318 (1958).

■ The city asserts that it had no duty to maintain the Blue River channel because it never adopted the river as part of its drainage system. The plaintiffs disagree and have attached to their suggestions numerous ordinances, resolutions, and other exhibits which purportedly show this city has exercised control over the Blue River channel since at least 1931. The city describes these exhibits as a "bushelbasket full of irrelevancies," but the court finds that plaintiffs have at least raised a material issue of fact precluding summary judgment on this allegation. Fed.R.Civ.P. 56(c). Moreover, it is noteworthy that in *Lucas v. City of Louisiana,* which both sides apparently acknowledge as the leading Missouri case in this area, the court considered various ordinances and resolutions as probative evidence on the issue of whether the city had adopted a natural waterway as part of its drainage system. 173 S.W.2d at 631–35.

B. Permitting the Paving of Brush Creek and Town Fork Creek

The complaints allege that the paving of Brush Creek and Town Fork Creek accelerated the flow of water to the damage of plaintiffs' insured. The city contends the doctrine of governmental immunity forecloses any claim based upon such an allegation since it goes not to the manner in which the improvements were executed but to the decision to undertake the projects. Plaintiffs respond that the actions of the city subject it to liability under the common-enemy doctrine of surface water.

Stated in its extreme form, the common-enemy doctrine is that as an incident to his right to use his own property as he pleases, each landowner has an unqualified right, by operations on his land, to fend off surface waters as he sees fit without being required to take into account the consequences to other landowners, who have the duty and right to protect themselves as best they can.

Annot., 93 A.L.R.3d 1193, 1199 (1979) (footnote omitted). As modified in Missouri,

the rule is, in substance, that a landowner in the reasonable use and development of his land may drain it by building thereon sewers, gutters and such other artificial water channels for the purpose of carrying off the surface waters into a "natural surface-water channel" . . . located on his property without liability to the owner of neighboring land, even though such method of ridding his property of surface water accelerates and increases the flow thereof, provided that he acts without negligence, and provided further that he does not exceed the natural capacity of the drainway to the damage of neighboring property.

*Haferkamp v. City of Rock Hill,* 316 S.W.2d 620, 625–26 (Mo.1958) (citation omitted). Stated another way,

[w]hat is actionable is (1) the collection of surface water into an artificial channel or volume and discharge of it in increased and destructive quantities upon the servient estate to its damage, (2) the draining off of surface waters in such a manner as to exceed the natural capacity of the drainways and (3) the discharging of surface waters onto adjacent lands to which it would not naturally drain.

*Borgmann v. Florissant Development Co.,* 515 S.W.2d 189, 194–95 (Mo.App.1974).

"This rule applies to a municipal corporation as well as to an owner and developer of urban land." *Skaggs v. City of Cape Girardeau,* 472 S.W.2d 870, 874 (Mo.App.1971).

■ In the face of such clear precedent, the city's immunity argument must fall. It has long been recognized in Missouri that municipal corporations,

> though not obliged to construct sewers or drains to protect adjoining owners against the flow of surface water from public ways, yet, if they do construct drains, and thus carry water and cast water upon the adjacent lands, are as much responsible as though they had invaded such lands by sending their servants thereon.

*Paddock v. Somes,* 102 Mo. 226, 14 S.W. 746, 749 (1890). Other cases may be cited wherein a city was held liable under the common-enemy doctrine even though the drainage improvement was properly constructed and functioned generally as expected. For example, in *Skaggs v. City of Cape Girardeau,* the court restated the common-enemy doctrine and remanded for a new trial with the following admonition:

> Within the limit of the evidentiary facts that were developed at the trial, liability can be determined here only upon the negligence of defendant city, if its negligence be pleaded and proved, *or* upon the city exceeding the natural capacity of a drainway (which in itself seems to be an act of negligence), if one is shown to exist in the area of plaintiffs' property.

472 S.W.2d at 875 (emphasis added). *See also Haferkamp,* 316 S.W.2d at 625–26. Summary judgment on this allegation is therefore inappropriate since material issues of fact remain, *e.g.* whether the city exceeded the natural capacity of any drainway.

### C. Failure to Revise and Improve the Blue River Channel

Several allegations of the complaints concern the city's failure to revise and improve the Blue River channel even after compre-

hensive studies had revealed problems with the drainage system as it existed. The city again argues that it is shielded from liability by the doctrine of governmental immunity. In response to this portion of the motion, plaintiffs suggest that the city "has a duty to protect the safety and property of its citizens from the dangers of flooding"; however, plaintiffs cite not one authority to support this proposition. *Plaintiffs' Suggestions in Opposition to Defendant Kansas City's Motion for Summary Judgment* at 21.

■ From the discussion of the common-enemy doctrine, it should be apparent that a municipality does not enjoy absolute immunity for its actions in the area of sewerage and flood control. On the other hand, the doctrine of governmental immunity is by no means defunct. Mo.Ann.Stat. § 537.600 (Vernon Supp. 1982). According to the Missouri Supreme Court, "broad planning decisions such as whether or not to build a sewer system, the extent of the system and the amount to be spent thereon" are still recognized as governmental functions to which no liability can attach. *St. Joseph Light & Power Co. v. Kaw Valley Tunneling, Inc.,* 589 S.W.2d 260, 267 (Mo.1979). *Accord, Woods v. City of Kansas,* 58 Mo.App. 272, 278–79 (1894). *See generally* 57 Am.Jur.2d *Municipal, School, and State Tort Liability* §§ 166, 201 (1971). This court will not permit plaintiffs via these lawsuits to second-guess the city's exercise of its governmental discretion; therefore, summary judgment will be granted as to these allegations.

### D. Permitting Development in the Blue River Basin

Plaintiffs seek to hold the city liable for permitting development in the Blue River basin. The city again cites the doctrine of governmental immunity as a basis for summary judgment on these allegations. In response, plaintiffs suggest that the city may have liability insurance and thus may be amenable to suit to the extent of that

insurance. Mo.Ann.Stat. § 71.185 (Vernon Supp.1982). In reply, the city refutes this contention with an affidavit by Richard Tanksley, its Commissioner of Property and Insurance, who states the city carries no such liability insurance.

■ Summary judgment in favor of the city is appropriate as to this allegation. Plaintiffs complain because the city did not enact restrictions on development in the Blue River basin as suggested in a 1968 report but instead continued to issue building permits in the area. It is clear that "the enactment and enforcement of ordinances is a governmental function." *Bean v. City of Moberly,* 350 Mo. 975, 169 S.W.2d 393, 397 (1943). *See also Downing v. City of Joplin,* 312 S.W.2d 81, 83 (Mo.1958). As such, no tort liability attaches to the city's decision. *Bean,* 169 S.W.2d at 397. *See generally Davis v. City of St. Louis,* 612 S.W.2d 812, 814–15 (Mo.App.1981) (restating the distinction between governmental and proprietary functions); Annot., 62 A.L. R.3d 514 (1975).

### E. Causing and Allowing Certain Bridges to Obstruct the Blue River

Plaintiffs complain that the city permitted certain privately owned railroad bridges over the Blue River to obstruct the river's flow near the General Motors Assembly Plant, thereby contributing to the flooding. The city contends it cannot be held liable on these allegations since exclusive jurisdiction over such matters is vested in the Missouri Public Service Commission. Plaintiffs respond to this argument by citing certain sections of the Charter of Kansas City, Missouri. Section 1(36) provides the city shall have power "to direct, regulate and control the location, laying and construction of the tracks, bridges, turnouts, switches, tunnels, viaducts of any such railroad or other transportation company or companies upon, in, across, under or above the streets, alleys, highways and public places of the city." Plaintiffs find this provision sufficient to

confer upon the city jurisdiction over the bridges in question. In reply, the city correctly points out that plaintiffs' argument requires a finding that the Blue River channel is in fact a "public place."

■ The court has reviewed the authorities cited on both sides but finds it unnecessary to resolve this difficult question of jurisdiction. For purposes of this motion, it suffices instead to assume that the city possesses either exclusive or concurrent jurisdiction over the bridges. The gist of plaintiffs' complaint is that the city failed to exercise its authority over the construction, maintenance, and regulation of the bridges. The cases cited in the two previous sections should make it abundantly clear that these allegations cannot withstand summary judgment. Once again, plaintiffs have attempted to predicate liability upon the city's failure to enact ordinances which, in plaintiffs' judgment, would be beneficial to the health, safety, and welfare of the community; however, the discretion to decide such matters rests with the city—not with plaintiffs.

## II. MOTIONS TO DISMISS BY DEFENDANT RAILROADS

In both cases, defendant St. Louis-San Francisco Railway Company has moved for dismissal and defendant Missouri Pacific Railroad Company has moved for judgment on the pleadings as to Counts V, VI, and VII, which allege nuisance, negligence and trespass, respectively, in the design, construction, and maintenance of four railroad bridges which span the Blue River near the General Motors Plant and which allegedly contributed to the flood damage. The railroads argue that an action under Mo.Ann. Stat. § 389.660 (Vernon Supp. 1982), upon which Count IV of each complaint is founded, is the exclusive remedy for the injuries alleged here. Plaintiffs oppose the motions, arguing that section 389.660 has not entirely preempted the subject matter of their complaints.

In 1974, the Missouri Supreme Court held that section 389.660 was not an exclusive remedy and that a plaintiff retained the right to elect common law remedies. *Hawkins v. Burlington Northern, Inc.,* 514 S.W.2d 593 (Mo.1974). In 1976, the Missouri legislature, in an apparent response to *Hawkins,* amended section 389.660 by adding the following underlined passages:

> 1. It shall be the duty of every corporation, company or person owning or operating any railroad or branch thereof in this state, and of any corporation, company or person constructing any railroad in this state, within three months after the completion of the same through any county in this state, to cause to be constructed and maintained suitable openings across and through the right-of-way and roadbed of such railroad, and suitable ditches and drains along the roadbed of such railroad, to connect with ditches, drains and watercourses, so as to afford sufficient outlet to drain and carry off the water, including surface water, along such railroad whenever the draining of such water has been obstructed or rendered necessary by the construction of such railroad; <u>any person owning land adjoining such railroad where such ditches or drains are necessary is authorized to require the railroad company to construct and maintain such ditches or drains by an action against the railroad company for a mandatory injunction;</u> and in case such corporation, company or person shall fail or neglect to construct and maintain such ditches or drains within the time limited in this chapter, any person owning land adjoining such railroad where such ditches or drains are necessary is hereby authorized, after giving thirty days' notice, in writing, to such owner or operator of said railroad, by service upon the nearest station agent or section foreman, to cause such ditches, drains, openings, culverts or trestles to be constructed and maintained, and such landowner may maintain an action against such corporation, company or person so failing to construct and maintain such ditches or drains, in any court of competent jurisdiction, and shall be entitled to recover all costs, expenses and damages incurred and accruing in the construction and maintenance of <u>or damages for failure to construct and maintain</u> such ditches, drains, openings, culverts or trestles <u>which actions for damages and for mandatory injunction under this subsection shall be the only remedies maintainable against a railroad company for its failure to construct and maintain suitable ditches and drains.</u>

Mo.Ann.Stat. § 389.660.1 (Vernon Supp. 1982) (emphasis added).

■ The precise question presented, which has not been answered in a reported decision of any Missouri court, is the extent to which section 389.660 as amended, preempts common law remedies in cases such as this. The last phrase of the statute leaves no doubt that section 389.660 prescribes the exclusive remedy for a railroad's "failure to construct and maintain suitable *ditches and drains.*" Plaintiffs contend they may still assert common law claims since the injuries alleged resulted from water flowing across and through the railroad line. According to plaintiffs' interpretation of section 389.660, the legislature has made a clear distinction between "suitable *openings across and through* the right-of-way and roadbed" and "suitable *ditches and drains along* the roadbed"; therefore, the reference to "ditches and drains" at the end of the statute should be limited accordingly. In support of their motions, defendant railroads argue that "ditches and drains" as used in the statute is simply legislative shorthand for "ditches, drains, openings, culverts or trestles"; consequently, section 389.660 should be construed as prescribing the exclusive remedy for the breach of any duty described therein.

After repeated readings and careful study of section 389.660, the court has concluded that the motions must be granted. Although plaintiffs have made a skillful

argument capitalizing on the imprecise draftsmanship of the statute, the argument must ultimately fail for several reasons.

Initially, it should be noted that "[t]he primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." *City of Willow Springs v. Missouri State Librarian,* 596 S.W.2d 441, 445 (Mo.1980). In construing a statute, this court may properly consider the historical context of the legislation. *See, e.g., Darrah v. Foster,* 355 S.W.2d 24, 30–31 (Mo.1962). The amendments to section 389.660, coming as they did about two years after *Hawkins,* must be taken as a reaction to the rule there stated, *i.e.* that a plaintiff retains the right to elect "between the common law remedies and the cumulative, permissive, and alternative" statutory remedy. *Hawkins,* 514 S.W.2d at 599. The rule in *Hawkins* does not rest on any distinction between water flowing *across* and water flowing *along* the railroad right-of-way; therefore, it seems unlikely that the legislative response would include such a distinction.

A close reading of the statute reveals that the distinction between "ditches and drains along the roadbed" and "openings across and through the right-of-way and roadbed" is far less clear than plaintiffs perceive it to be. The phrases "ditches or drains" and "ditches, drains, openings, culverts or trestles" generally appear in section 389.660.1 in alternating succession. If a distinction was intended, the drafters did not take care to preserve it throughout the section.

To construe section 389.660 as plaintiffs suggest would lead to untoward results, as illustrated by the following examples. Section 389.660 provides that if the railroad owner fails to construct and maintain suitable "*ditches or drains,*" an adjoining landowner is authorized "to cause such *ditches, drains, openings, culverts or trestles* to be constructed and maintained" and may sue the railroad owner failing to construct or maintain such *ditches or drains* "to recover all costs, expenses and damages incurred and accruing in the construction and maintenance of or damages for failure to construct and maintain such *ditches, drains, openings, culverts or trestles.*" It also provides "any person owning land adjoining such railroad where such ditches or drains are necessary is authorized to require the railroad company to construct and maintain such ditches or drains by an action against the railroad company for a mandatory injunction." Under plaintiffs' interpretation, the adjoining landowner would be powerless to seek statutory relief in the courts if the railroad breached its duty as to openings, culverts, or trestles, yet on the other hand, if the railroad breached its duty as to ditches or drains, the adjoining landowner could seek an injunction or could resort to self-help to construct or maintain not only ditches or drains, but also openings, culverts or trestles. The landowner could then recover damages or construction costs as to ditches, drains, openings, culverts or trestles, even though a breach of duty concerning only ditches or drains was the basis for the lawsuit.

Simply put, plaintiffs' interpretation makes little or no sense in practical applications of the statute. Essentially, plaintiffs favor a distinction between water flowing parallel to the railroad and water flowing across or through the right-of-way. It takes little imagination to posit a situation where a railroad has breached its duties concerning ditches, drains, openings, culverts, *and* trestles, all to the adjoining landowner's damage. According to plaintiffs' theory, the adjoining landowner would still be able to pursue in part his common law remedies, but only after splitting his cause of action and attempting to apportion his damages between those caused by water flowing through inadequate ditches and drains and that flowing through inadequate openings, culverts and trestles. The legislature could not have intended such an absurd

and unworkable result; rather, the legislature intended that the railroad's conduct be judged against the standards set forth in section 389.660 in one statutory proceeding. The language of section 389.660 manifests this intent with sufficient clarity; therefore, plaintiffs' common law counts against the railroads must be dismissed.

## III. CONCLUSION

For the reasons stated, it is

ORDERED that the Motion for Summary Judgment filed by the City of Kansas City, Missouri, in the above-styled cases is granted in part and denied in part as specified herein. It is further

ORDERED that the Motion to Dismiss Counts V, VI and VII filed by St. Louis-San Francisco Railway Company in the above-styled cases is granted. It is further

ORDERED that the Motion for Judgment on the Pleadings on Counts V, VI and VII filed by Missouri Pacific Railroad Company in the above-styled cases is granted. It is further

ORDERED that no later than October 1, 1982, counsel for all parties shall jointly file a status report on these cases describing any remaining discovery and proposing a schedule for its completion.